Wendy **JENNINGS**, Plaintiff,

v.

**MID–AMERICAN ENERGY COMPANY**, Defendant.

No. 3:02 CV 90069.

United States District Court,
S.D. Iowa,
Davenport Division.

Sept. 17, 2003.

---

Robert S. Gallagher, Gosma & Gallagher PLC, Davenport, IA, for Plaintiff.

Arthur W. Eggers, Califf & Harper PC, Moline, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff Wendy Jennings brings this cause of action against her former employer, Defendant Mid–American Energy Company ("MEC"), after she was forced to resign in December 2001. Plaintiff's complaint alleges that MEC violated her rights under the Family and Medical Leave Act 29 U.S.C. § 2601 *et seq.* ("FMLA"), and that MEC tortiously interfered with Plaintiff's prospective business advantages after she had separated from MEC. Presently before the Court is Defendant's Motion for Summary Judgment that asks the Court to dismiss Plaintiff's complaint in its entirety. The parties have filed all necessary moving and resisting papers, and the matter is fully submitted. For the reasons explained below, Defendant's motion is **granted in part** and **denied in part.**

## I. BACKGROUND

Wendy Jennings began working as a customer service associate for MEC in May 1998. At some point after she started working for MEC, Plaintiff was diagnosed with autoimmune disorders, including rheumatoid arthritis. Plaintiff notified MEC of her condition upon diagnosis, and the parties agreed to an arrangement allowing Plaintiff to take intermittent medical leave as necessary for her condition under the FMLA.

On December 15, 2001, Plaintiff arrived for her scheduled shift before 7:00 a.m. Shortly thereafter, at around 9:15 a.m., Plaintiff went to her supervisor, Heidi De-Brobander, and told her that she was not feeling well and that she may have to leave early if she did not start feeling better. Jennings continued to work, but her right hand began to swell as a result of her autoimmune disorder, making it difficult for her to operate her computer mouse. At 2:45 p.m., Plaintiff again went to her supervisor and showed Ms. DeBrobander her hand, claiming that she felt "achy all over." Ms. DeBrobander offered to send Jennings home because of the swelling in her hands. Plaintiff claims that she did not ask to leave, but Jennings felt that she "should go home at that time" because she was having difficulty "operating on a continual basis the computer keyboard and the computer mouse." Plaintiff left work after she was sent home because of her swollen hand. On her way home, however, Plaintiff stopped at Toys–R–Us to purchase a gift for a co-worker's baby shower the next day. While in the store, Plaintiff saw one co-worker, Michelle Hecker, and spoke with another co-worker, Jeffrey Clark. Jennings attended the baby shower the next afternoon.

On Monday, December 17, 2001, Plaintiff's next scheduled work day, Jennings reported to MEC that she would not be in that day because she was not feeling well. Later that evening, Plaintiff was again seen shopping by one of her co-workers. The co-worker, Rachelle Ohlweiler, provided a written statement to MEC, claiming to have spotted Plaintiff in the check out line at Super Target with a "cart full of goodies." Ohlweiler further noted that Plaintiff's hair and makeup were "done up," and that Jennings "did not look at all like she was sick." Plaintiff, however, denies that she was at Super Target on Monday evening.

Plaintiff called in sick to work again the next day. On December 20, 2001, Plaintiff was not scheduled to work, but she was called in for a meeting with her supervisors. During the meeting, Plaintiff was asked about her activities on December 15th and 17th. After admitting that she had been gone to Toys–R–Us on December 15th after she was sent home sick from work, Plaintiff was given the choice of resigning or being terminated for misusing leave time. Jennings opted to resign and was immediately escorted out of the building without being allowed to retrieve her personal belongings from her desk. MEC then collected and destroyed any personal papers left in Plaintiff's desk.

Plaintiff admits that MEC held an honest belief that she was using FMLA leave time to shop on both December 15 and 17, 2001. Plaintiff contends, however, that she was constructively terminated because she was taking intermittent FMLA leave time, which Plaintiff's supervisor, Heidi DeBrobander, allegedly informed Jennings was "costing [MEC] a lot of money." Plaintiff further contends that her forced resignation was prompted by her presence on an alleged "watch list" of employees who MEC wanted to "get rid of."

Subsequent to her separation with MEC, Plaintiff found employment selling insurance. At some point thereafter, Plaintiff alleges that she made several business appointments with former MEC co-workers and that MEC supervisors knew of these prospective business relationships. Before the appointments could be completed, however, Plaintiff alleges that the meetings were cancelled by the prospective customers because they had been instructed, by their MEC supervisors, not to meet with Jennings. Plaintiff contends that the alleged interference caused several prospective customers to discontinue their business relationship with her. To show the likelihood that these business appointments would have led to sales, Plaintiff cites a "statistic" from her current employer that "for every ten people you contact, three will give you an appointment, and one will become a customer," but Plaintiff admits that the business maxim is not indicative of how much product a prospective customer might purchase.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT IN EMPLOYMENT CASES

Rule 1 of the Federal Rules of Civil Procedure states that all Rules, including Rule 56, "be construed and administered to secure the just, speedy, and inexpensive determination of every action." Summary judgment, however, is not a paper trial. "The district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). In a motion for summary judgment this Court has but one task, to decide, based on the evidence of record as identified in the parties' moving and resistance papers, whether there is any material dispute of fact that requires a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); 10A *Charles A. Wright, Arthur R. Miller & Mary Kay Kane* § 2712, at 574–78. The parties then share the burden of identifying the evidence that will facilitate this assessment. *Waldridge*, 24 F.3d at 921.

As employment actions are inherently fact based, the Eighth Circuit has repeatedly cautioned that summary judgment should "seldom be granted ... unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Hindman v. Transkrit Corp.*, 145

F.3d 986, 990 (8th Cir.1998) (citations omitted). *See also Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991)), ("summary judgment should seldom be used in employment-discrimination cases"); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). This is because "inferences are often the basis of the claim ... and 'summary judgment should not be granted unless the evidence could not support any reasonable inference' of discrimination." *Breeding v. Arthur J. Gallagher & Co.,* 164 F.3d 1151, 1156 (8th Cir.1999) (quoting *Lynn v. Deaconess Med. Ctr.-West Campus,* 160 F.3d 484, 486–87 (8th Cir.1998)). Nevertheless, the plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Snow v. Ridgeview Med. Ctr.,* 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Bialas v. Greyhound Lines, Inc.,* 59 F.3d 759, 762 (8th Cir.1995)).

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Walsh v. United States,* 31 F.3d 696, 698 (8th Cir.1994); *United States v. City of Columbia,* 914 F.2d 151, 153 (8th Cir.1990); *Woodsmith Publ'g v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic,* 691 F.2d 405, 408 (8th Cir.1982).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Celotex Corp.* 477 U.S. at 323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed.R.Civ.P. 56(c),(e); *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material....Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Lastly, in considering a motion for summary judgment, the Court neither weighs the evidence, nor does it make credibility determinations. *See Anderson, Id.* at 252, 106 S.Ct. 2505. Rather, the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *Id.*

## III. DISCUSSION

### A. FMLA Claim

The FMLA entitles employees to an annual total of twelve weeks of leave for a

number of reasons including "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). As is the case here, leave may be taken intermittently when medically necessary. *See* 29 U.S.C. § 2612(b)(1). Upon returning from leave, "any eligible employee who takes leave under [§ 2612] for the intended purpose of the leave shall be entitled ... to be restored by the employer to the position of employment held by the employee when the leave commenced." 29 U.S.C. § 2614(a)(1)(A). The Leave Act then prohibits employers from interfering with any right provided under the Act, or from discharging or otherwise discriminating against an employee for opposing any unlawful practice under the same. *See* 29 U.S.C. § 2615(a)(1), (2).

■ Courts interpreting the FMLA have identified two types of claims under § 2615(a), interference with substantive rights and discriminatory retaliation. *Strickland v. Water Works & Sewer Bd.,* 239 F.3d 1199, 1206 n. 9 (11th Cir.2001). Where an employee states a claim of interference with a substantive right, an objective test applies, requiring the employee to show, by a preponderance of the evidence, that she was entitled to the benefit denied. *Id.* at 1206–07; *Rankin v. Seagate Technologies, Inc.,* 246 F.3d 1145, 1148 (8th Cir.2001) (applying objective test to substantive FMLA claim and rejecting use of burden-shifting analysis for same). To succeed on a claim for discriminatory retaliation, in contrast, the "employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Strickland,* 239 F.3d at 1207. In the absence of direct evidence that the employer's actions "were motivated by an impermissible retaliatory or discriminatory animus," courts apply the familiar burden-shifting analysis set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. *Strickland,* 239 F.3d at 1207 (quoting *King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir.1999)). *See Smith v. Allen Health Sys., Inc.,* 302 F.3d 827, 832 (8th Cir.2002) (applying *McDonnell Douglas* to FMLA retaliation claim).

**1. Interference with substantive rights**

■ Jennings alleges both that MEC interfered with her substantive rights under the FMLA by not restoring her to her position upon returning from leave and that MEC unlawfully retaliated against Plaintiff for her use of intermittent leave time. Restated, Plaintiff claims that, regardless of its motives or rationale, MEC interfered with her statutory rights, and that the interference was in retaliation to Plaintiff's use of leave time. Defendant, however, contends that Plaintiff has not stated a substantive rights claim because she requested and was granted leave. Accordingly, Defendant argues, Plaintiff has stated only a claim for retaliation. The Court disagrees.

As noted above, the FMLA grants the employee not only the right to take leave, but also provides the employee with the crucial right to be restored to her position of employment upon returning from leave so long as leave was taken for its intended purpose. *See* § 2614(a)(1)(A). As one commentator aptly notes, "[w]ithout this right, an employee might be allowed to take the leave, but would have no job after using that leave". Stacy A. Hickox, *The Elusive Right to Reinstatement under the Family Medical Leave Act,* 91 Ky. L.J. 477, 482 (2002).

■ The right to restoration, however, is not absolute. *Kohls v. Beverly Enters. Wis., Inc.,* 259 F.3d 799, 804 (7th Cir.2001). Under the act, an employer may refuse to

restore the employee if doing so would confer "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). As the regulations promulgated by the Secretary of Labor explain:

> An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.

29 C.F.R. § 825.216(a).

 As the regulations make clear, the burden is on the employer to show that the exception applies. Thus, "if an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable." *Strickland,* 239 F.3d at 1208.

Here, Plaintiff alleges that she was entitled to reinstatement following her leave under the FMLA, and that MEC interfered with or denied her this right by not allowing her to return to work. Whether MEC's actions were prompted by retaliatory animus is not at issue here. If Plaintiff can objectively prove by a preponderance of the evidence that she was entitled to the right denied by Defendant, MEC's motives for refusing to reinstate her, whether in good or bad faith, are irrelevant. *See Strickland,* 239 F.3d at 1208; *Rankin,* 246 F.3d at 1148. *See also Bachelder v. Am. W. Airlines, Inc.,* 259 F.3d 1112, 1130 (9th Cir.2001) ("the employer's good faith or lack of knowledge that its conduct violated the Act is, as a general matter, pertinent only to the question of damages under the FMLA, not to liabili-

ty"). So long as MEC had no reason for terminating Jennings other than her use of leave time, the specific act of refusing to restore her to her position following the leave is unlawful and actionable. Accordingly, the Court finds that Plaintiff has stated a claim for interference with her substantive rights under the FMLA.

Although the Court has found that Plaintiff has stated a substantive interference claim, the question remains as to whether there are disputed issues of material fact that allow the claim to survive Defendant's summary judgment motion. To succeed on her interference claim, Plaintiff must prove that 1) she was entitled to intermittent leave because of a serious health condition that left her unable to perform the functions of her position; 2) she took said leave for its intended purpose; and 3) that, upon returning from leave, MEC refused to restore her to the position of employment she held when the leave commenced. *See* 29 U.S.C. §§ 2612(a)(1)(D), 2614(a)(1)(A).

Here, the question is whether Jennings was entitled to restoration of employment based on whether she used leave time for its intended purpose. MEC contends that Plaintiff misused her leave time to go shopping on December 15th and 17th. Plaintiff admits that she stopped at Toys–R–Us on her way home from work on the 15th, but denies that she was at Super Target on the evening of the 17th. Moreover, Plaintiff argues that a reasonable jury could conclude that she was unable to perform the essential functions of her job when her supervisor sent her home on December 15, 2001, but capable of stopping at a store to purchase one item on her way home. The Court agrees. The FMLA contains no requirement that an individual on intermittent medical leave must immediately return home, shut the blinds, and emerge only when prepared to

return to work. Such a rule would be both unreasonable and impossible. Whether Plaintiff was unable to perform the functions of her employment, i.e. whether she was using her leave time for its intended purpose, is a question of fact for a jury to decide. Accordingly, Defendant's motion for summary judgment is denied on Plaintiff's interference claim.[1]

## 2. Retaliation

■ Plaintiff also alleges that she was constructively discharged by MEC in retaliation for taking intermittent FMLA leave over a period of time. As noted above, where, as here, there is only circumstantial evidence of retaliation, the claim is reviewed using the *McDonnell Douglas* burden-shifting analysis. *See Smith v. Allen Health*, 302 F.3d at 832. Under *McDonnell Douglas*, Plaintiff bears the first burden of establishing a prima facie case of discriminatory retaliation by showing that "she exercised rights afforded by the Act, that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action." *Id.* If Plaintiff establishes her prima facie case, the burden shifts to the Defendant to show legitimate nondiscriminatory reasons for the adverse action. *Id.* at 833, 93 S.Ct. 1817. Upon making such a showing, the burden shifts again to the Plaintiff to prove, by a preponderance of the evidence, that Defendant's proffered explanation is merely a pretext for discrimination. *Id.*

Whether Plaintiff can establish a prima facie case of retaliation is presently unknown. If a jury were to find that Plaintiff was not using leave time for its intend-ed purpose, then Plaintiff was not engaged in a protected activity. Beyond this element, however, Plaintiff's case is undisputed. A forced resignation is certainly an adverse employment action akin to termination. *See generally Clearwater v. Independent Sch. Dist. No. 166*, 231 F.3d 1122, 1124, 1126 (8th Cir.2000) (supplanting "forced resignation" with "termination" as adverse employment action). The causal connection is clear as Plaintiff's termination was tied solely to her use of FMLA leave time. For purposes of this analysis then, the Court will assume that Plaintiff can prove a prima facie case of retaliation. Having done so, the burden shifts to Defendant to show a legitimate nondiscriminatory reason for the termination.

■ Defendant contends that MEC forced Jennings to resign based on an what it claims was an honestly held belief that Jennings was misusing her FMLA leave to go shopping. Defendant notes that Plaintiff has admitted that MEC honestly believed that she was misusing her leave time to go shopping. As such, Defendant urges the Court to adopt a so-called "honest belief rule." Under this doctrine that arose out of the Seventh Circuit, courts have held that where an employer honestly believes that an employee is misusing leave time, the employer cannot be found liable, even if the belief is mistaken. *See e.g. Kariotis v. Navistar*, 131 F.3d 672, 681 (7th Cir.1997) ("Navistar need not conclusively prove that Kariotis had misused her leave; an honest suspicion will do"); *Moughari v. Publix Super Markets, Inc.*, 1998 WL 307454, *1, 1998 U.S. Dist. LEXIS 8951, *4—*5 (N.D.Fla. 1998) (employer's honest belief that em-

---

1. Defendant has amended its Answer to include an affirmative defense based on after acquired evidence of Plaintiff's prior misuse of FMLA time. Defendant's summary judgment motion does not include the affirmative defense, but Defendant includes the issue in its brief. At this time, the Court need not consider the merits of the defense. Defendant will, of course, be able to assert the defense at trial.

ployee was using leave time to open used car business sufficient to evade liability even if mistaken). As the Sixth Circuit explained the rule:

> The rationale behind the rule is that the focus of a discrimination suit is on the intent of the employer. If the employer honestly, albeit mistakenly, believes in the non-discriminatory reason it relied upon in making its employment decision, then the employer arguably lacks the necessary discriminatory intent. "In other words, arguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for a decision are '*right* but whether the employer's description of its reasons is *honest*." '

*Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir.1998) (quoting *Kariotis*, 131 F.3d at 677) (quoting *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir.1992)) (emphasis in original). In *Smith*, however, the Sixth Circuit went on to criticize the "honest belief rule" because the rule "does not require an employer to demonstrate that its belief was reasonably grounded on particularized facts that were before it at the time of the employment action," and instead exonerates an employer that provides "an honest reason for firing the employee, even if that reason had no factual support." *Smith*, 155 F.3d at 806 (internal citation omitted). In addition to the concerns expressed by the Sixth Circuit, the Court notes that the "honest belief rule" appears to eviscerate the third prong of the *McDonnell Douglas* analysis as the employee's opportunity to show that the employer's proffered explanation is merely a pretext for discrimination is effectively foreclosed. Keeping in mind that summary judgment should seldom be granted in employment cases, The Court is extremely hesitant to apply any rule that decidedly reduces an employee's opportunity to show that her employer's actions were motivated by unlawful discrimination.

The Eighth Circuit has not specifically considered the honest belief rule. In at least one case though, the Court of Appeals rejected a discrimination claim where an employee could offer "no evidence suggesting anything other than the [employer's] honest belief" that the employee was sleeping on the job. *Scroggins v. University of Minn.*, 221 F.3d 1042, 1045 (8th Cir.2000). That the *Scroggins* court noted that the employee could offer no evidence to rebut the employer's honestly held belief implies that the court would have considered evidence of pretext if available. The Court, therefore, adopts the reasoning of the Eighth Circuit and refuses to adopt a bright-line honest belief rule to shield employers from liability.

As noted above, Defendant contends that Jennings was terminated for dishonestly misusing FMLA leave time to go shopping. In an at-will employment state such as this, employee dishonesty and misuse of leave time are certainly valid and nondiscriminatory explanations for terminating an employee. Under *McDonnell Douglas* the burden now reverts back to Plaintiff to show that the MEC's explanation is nothing more than a pretext for discrimination. Plaintiff offers two examples of alleged pretext. The first is an alleged "watch list" of employees Defendant wanted "to get rid of." Plaintiff claims that she was first on this list prior to her termination. Plaintiff, however, has never seen this list, and every person who she alleges told her about the list summarily denied the existence of such a list during depositions. Regardless of Plaintiff's suggestion that in spite of their denials, "their demeanor and faces admitted such a list," Plaintiff has offered nothing but unsupported allegations to prove the existence or contents of the watch list.

Plaintiff also contends that a statement made by her supervisor evinces pretext. Specifically, Plaintiff alleges that Heidi De-Brobander said to her "between your spider bites and your FMLA, you're costing this company a lot of money." Although Ms. DeBrobander denied making such a statement, whether Plaintiff's account is accurate is irrelevant because, as Defendant points out, Ms. DeBrobander is not a decision maker. Accordingly, her statements are not attributable to MEC, and Plaintiff cannot rely on the alleged statement as evidence of pretext. Because Plaintiff cannot meet her burden to show that MEC's explanation is a pretext for discrimination, Plaintiff's retaliation claim fails. Defendant's motion for summary judgment is, therefore, granted on Plaintiff's retaliation claim.

## B. Tortious Interference with Prospective Business Advantage

 Plaintiff also claims that Defendant tortiously interfered with her prospective business when MEC supervisors instructed former Plaintiff's former co-workers not to meet with her. Under Iowa law, liability may be imposed "when a person intentionally and improperly interferes with another's prospective contractual relationships with the sole or primary purpose to injure or destroy the plaintiff." *Financial Marketing Servs., Inc. v. Hawkeye Bank & Trust of Des Moines*, 588 N.W.2d 450, 459 (Iowa 1999). To succeed on a claim for tortious interference with a prospective business contract or advantage, a plaintiff must prove five elements by a preponderance of the evidence:

1) the plaintiff had a prospective contractual relationship with a third person;
2) the defendant knew of the prospective relationship;
3) the defendant intentionally and improperly interfered with the relationship in one or more particulars;

4) the interference caused either the third party not to enter into or to continue the relationship or that the interference prevented the plaintiff from entering into or continuing the relationship; and
5) the amount of damage.

*ACT, Inc. v. Sylvan Learning Sys.*, 104 F.Supp.2d 1096, 1104 (N.D.Iowa 1999) (quoting *Tredrea v. Anesthesia & Analgesia, P.C.*, 584 N.W.2d 276, 283 (Iowa 1998). "[T]o avoid opening the door to virtually limitless suits of a highly speculative and remote nature," "plaintiffs who allege tortious interference with prospective business relations are held to a strict standard of substantial proof 'that the defendant acted with a predominantly improper purpose.'" *Hoefer v. Wisconsin Education Assn. Ins. Trust*, 470 N.W.2d 336, 341 (Iowa 1991) (quoting *Page County Appliance Center v. Honeywell, Inc.*, 347 N.W.2d 171, 178 (Iowa 1984); *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 800 (Iowa 1984)).

As Defendant aptly notes, Plaintiff has named only MEC as a corporation in her complaint. MEC is a large electric service provider, whereas Plaintiff is currently employed in the wholly unrelated field of insurance. The leap in logic necessary to assume that MEC as a corporation would seek to interfere with Plaintiff's prospective contractual relationships with the sole or primary purpose to injure or destroy her is enormous. Plaintiff offers nothing to show that MEC as a corporate entity had any motivation to injure or destroy her. In fact, Plaintiff stated in her deposition that the alleged interference was in no way beneficial to MEC. (Def.App. at 28–29).

 Plaintiff provides only the allegation that MEC supervisors told her former co-workers not to meet with her. Assuming arguendo that these individuals were

acting to injure Jennings, their actions are not necessarily attributable to Defendant. A corporation may only be held liable for the torts of its employees when the employee is acting within the scope of his or her employment. That is, the conduct must be "necessary to accomplish the purpose of the employment and is intended for such purpose." *Sandman v. Hagan*, 261 Iowa 560, 154 N.W.2d 113, 117 (Iowa 1967). Telling subordinates not to meet with Plaintiff regarding the purchase of personal insurance products is not within the scope of the supervisors' employment with MEC.

Even if Plaintiff could show that MEC intended to interfere with her business prospects, her claim still fails. The fifth element of the tort requires Plaintiff to show that she has been damaged by the Defendant's alleged interference. Plaintiff has offered nothing to prove the extent, if any, of her alleged damages. As Plaintiff explained during her deposition, the appointments that were cancelled were initial "fact-finding" meetings where Plaintiff would gather information about the prospective client so that she might recommend certain products at a later date. None of these meetings were certain to produce any sales. Rather, Plaintiff relies on her current employer's sales maxim that "for every ten people you contact, three will give you an appointment, and one will become a customer." Although Plaintiff refers to the phrase as a statistic, she admits that it is impossible to calculate the likelihood that any of her prospective clients would have purchased anything from her. With nothing beyond bare speculation that some of the people she intended to meet with may have become clients, Plaintiff has not shown any evidence of her damages. Without more, Plaintiff's claim must fail. Accordingly, Defendant's motion is granted on Plaintiff's tortious interference claim.

## IV. ORDER

Defendant's Motion for Summary Judgment is **granted** on Plaintiff's FMLA retaliation claim and tortious interference claim. The motion is **denied** on Plaintiff's claim for interference with substantive rights under the FMLA.

IT IS SO ORDERED.