[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15206

_____

D. C. Docket No. 1:10-cv-23114-JLK

ILIANA RODRIGUEZ,

Plaintiff-Appellant,

versus

UNIVERSITY OF MIAMI HOSPITAL,
a Florida Corporation, d.b.a. University of Miami Hospital,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 3, 2012)

Before HULL and BLACK, Circuit Judges, and WHITTEMORE,[*] District Judge.

PER CURIAM:

_____

[*]Honorable James D. Whittemore, United States District Judge for the Middle District of
Florida, sitting by designation.

Iliana Rodriguez appeals the district court's grant of summary judgment in favor of her former employer, the University of Miami Hospital (the Hospital), in her employment discrimination action under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(1), (2). She contends the district court erred in granting summary judgment because disputed issues of material fact remain on both her FMLA reinstatement and termination claims. After review and the benefit of oral argument, we reverse the district court's grant of summary judgment on the reinstatement claim, affirm the grant of summary judgment on the termination claim, and remand for further proceedings.

## I. BACKGROUND

Rodriguez filed a Complaint in the Southern District of Florida against the Hospital, alleging the Hospital interfered with her right to reinstatement by failing to return her to her original position after her return from FMLA leave, "significantly reducing her job duties and responsibilities to the point where she effectively had no meaningful position at the Hospital." Rodriguez contended that eventually, the Hospital terminated her position in retaliation for taking FMLA leave. Rodriguez brought both an FMLA reinstatement and termination claim as a result of her allegations against the Hospital.

2

The Hospital filed an "Answer and Affirmative Defenses," denying the allegations necessary to Rodriguez's FMLA reinstatement and termination claims. As part of its affirmative defenses, the Hospital asserted that Rodriguez could not establish any causal connection between her FMLA leave and the adverse employment actions in both her reinstatement and termination claims.

The Hospital moved for summary judgment, and the district court granted the Hospital's motion. The district court acknowledged that many facts on the record were disputed, but determined the factual disputes were irrelevant because even accepting Rodriguez's version of events, there was no causal connection between the Hospital's actions and Rodriguez's FMLA leave.

As to Rodriguez's reinstatement claim, the district court determined that similar to the employee in *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1241-43 (11th Cir. 2010), Rodriguez experienced performance problems before taking FMLA leave. Thus, Rodriguez was not entitled to reinstatement because she performed poorly in her job *prior* to taking FMLA leave. Because an employee is not entitled to any right, benefit, or position of employment other than what she would have been entitled had she not taken leave, Rodriguez would not have been entitled to retain her job had she not taken leave.

3

As to Rodriguez's termination claim, the district court applied the *McDonnell Douglas*[1] burden-shifting framework. The district court acknowledged the six-week temporal proximity between the FMLA leave and Rodriguez's alleged firing, but determined Rodriguez failed to show the required causal link between the FMLA leave and her discharge. Even if Rodriguez established a *prima facie* case, the Hospital came forward with legitimate reasons for its actions, specifically, Rodriguez's poor performance in her job.

The district court concluded that Rodriguez was fired "after a long history of friction with her supervisor," Francetta Allen. At best, Rodriguez's evidence showed (1) Allen acted unprofessionally toward Rodriguez prior to Rodriguez's leave, (2) Allen transferred Rodriguez to a position not equivalent to her former position upon her return from leave, and (3) Allen finally fired her. Thus, no facts supported that Rodriguez was fired because she took FMLA leave.

## II. DISCUSSION

We review a "grant of summary judgment *de novo*, applying the same legal standards as the district court and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1203 (11th Cir. 2001). At the summary

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

judgment stage, "the employee must raise only a material issue of fact, which [s]he may generate through reasonable inferences, regarding each element of [her] claim." *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000). An issue of material fact "is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (en banc).

The FMLA entitles eligible employees to 12 weeks of leave during any 12-month period for a serious health condition. 29 U.S.C. § 2612(a)(1)(D). Following a period of FMLA leave, an employee has the right to be restored to her original position or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id.* § 2614(a)(1). An equivalent position is "virtually identical" to the employee's original position, and the position "must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a). When an employee cannot perform an essential function of her original "position because of a physical or mental condition, including the continuation of a serious health condition," she "has no right to restoration to another position." *Id.* § 825.216(c). "An employee is 'unable to perform the functions of the position' where the health care provider

5

finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position." *Id.* § 825.123(a).

*A. Reinstatement*

Rodriguez's first theory of recovery is based on her allegation that the Hospital interfered with her right to reinstatement to her former position. An employee who takes FMLA leave has a "right to reinstatement; an employee returning from covered leave is entitled to be restored to [her] former position or its equivalent." *Strickland*, 239 F.3d at 1208. However, an employer is not liable for failing to reinstate an employee to her former position if the "employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave." *Id.*

At oral argument, the Hospital conceded for purposes of summary judgment that Rodriguez had established a *prima facie* FMLA interference claim, as she was not reinstated to her same or an equivalent position she held prior to taking FMLA leave. *See Schaaf*, 602 F.3d at 1241 ("Neither party disputes that [the employee] made a prima facie showing of an FMLA interference claim, in that she demonstrated she was not reinstated to the same position she held prior to taking her FMLA leave."). Although Rodriguez's pay and benefits stayed the same, she was transferred to a temporary position with significantly less responsibility than

6

she had previously.  In fact, Rodriguez was assigned only to copy documents, with virtually no responsibility.

If an employee is not reinstated to the same or equivalent position, "the employer bears the burden of proving that the employee was discharged for independent reasons that were unrelated to the employee's leave." *Id.* at 1241. Thus, our question is whether there is any genuine issue of material fact regarding the Hospital's defense that it transferred Rodriguez to the temporary and lesser position for reasons unrelated to her FMLA leave.  *See id.*

The Hospital asserts Rodriguez was transferred upon her return from FMLA leave because she was unable to perform the essential functions of her original position in that she was no longer able to work with Allen.  A meeting was held on January 4, 2010, between Rodriguez, Allen, Errol Douglas and Maribel Felix to discuss Rodriguez's and Allen's working relationship upon Rodriguez's return from FMLA leave.  Douglas, the Executive Director of Human Resources, testified that Rodriguez said she could not work with Allen at this meeting. Douglas decided Rodriguez needed reassignment.  Douglas transferred her to a temporary position because he determined that Rodriguez and Allen could no longer work together based on the interaction between Rodriguez and Allen at the meeting as both expressed "discord" toward each other.

7

If the record established undisputedly that Allen and Rodriguez could not work together, the Hospital would have met its burden that the transfer was "wholly unrelated" to Rodriguez's FMLA leave, and any causal connection to her FMLA leave would be broken.[2] *See Parris*, 216 F.3d at 1302 (explaining, in a reinstatement case, this Court looks to the record to determine whether an employee raises a reasonable inference that the employer would not have terminated the employee absent the employee's taking of FMLA leave).  However, one can read Douglas's deposition and conclude his decision that the two could not work together was based in part on Rodriguez's purported statements, upon her return, that she no longer wanted to work with Allen.  Rodriguez disputes that she ever stated at the meeting that she could not work with Allen.  Instead, Rodriguez wanted to "address whatever issue was there, and move on, thinking that whatever ha[d] to be done, I am willing to do it, because I didn't want to lose my job."  Rodriguez states she was willing to go back to work with Allen.  Additionally, at the meeting, there were discussions of an action plan for Rodriguez to return to work with Allen after her temporary assignment.

---

[2] Rodriguez is not required to prove a causal connection in an interference claim.  *See Spakes v. Broward County Sheriff's Office*, 631 F.3d 1307, 1309 (11th Cir. 2011) ("Our cases make clear that a causal nexus is not an element of an interference claim, but that the employer can raise the lack of causation as an affirmative defense.").

The Hospital sets forth two other reasons for its determination that Rodriguez could not perform the essential functions of her position working with Allen when she returned from FMLA leave–Rodriguez's mental state and performance issues predating Rodriguez's return from FMLA leave. There are genuine issues of material fact regarding both of these reasons.

As to Rodriguez's mental status when she returned to work, the Hospital contends her medical clearance to return to work on January 4, 2010, only dealt with her physical ability to do her job, not her mental ability. It points to Rodriguez's request for FMLA leave for December 28, 2009, to January 4, 2010, signed by her physician to show that Rodriguez was still suffering from "anxiety, panic attacks, [and] depressed mood" that would interfere with her ability to do her job with Allen. However, that form also states that Rodriguez is "improving." In any case, the Hospital cannot use the last FMLA leave request form filed before Rodriguez returned from leave to show that she was unable to perform her job when she actually returned. In fact, the same doctor who signed the form to request FMLA leave and who treated Rodriguez for anxiety, reviewed and signed the "Physical Demand" section stating Rodriguez was able to perform the functions without restrictions. Rodriguez stated that while she was still under

9

psychiatric care for her stress, she was progressively getting better and was able to work in her former job with Allen.

Additionally, the record does not support the Hospital's claim that Rodriguez had performance issues similar to the employee in *Schaaf* before she took FMLA leave. *See Schaaf*, 602 F.3d at 1241-43. In *Schaaf*, there were broad complaints about Schaaf's management style prior to her FMLA leave, and the employer learned more about the employee's ineffectiveness as a manager while she was on FMLA leave. *Id.* at 1241. That is not what happened here. There is no evidence Allen alerted anyone of Rodriguez's performance deficiencies before or during Rodriguez's leave, or that while Rodriguez was on leave Allen discovered Rodriguez's performance deficiencies.[3] Instead, Allen first detailed her issues with Rodriguez's performance in a last-minute email sent to Douglas at 7:10 a.m. on January 4 (just before the 8:15 a.m. January 4 meeting), citing issues from prior to Rodriguez's leave that had never been mentioned. Although there was evidence presented that evaluations were supposed to be completed annually, Allen did not timely complete Rodriguez's evaluation and testified she was unsure

---

[3] On May 14, 2009, Rodriguez (along with various other employees) was issued a written disciplinary warning for taking food from a conference room before a meeting. However, neither party points to this incident as a "performance issue."

10

if she completed it before Rodriguez took FMLA leave.[4]  Additionally, there is evidence that Rodriguez was told at the January 4 meeting that she might be able to return to her former position on an action plan.

A reasonable jury could disbelieve the Hospital's defense to Rodriguez's FMLA reinstatement claim, and could instead believe Rodriguez's version of events.[5]  Under her version of events, the day Rodriguez returned from FMLA leave, she requested a meeting to work out the issues Rodriguez had raised about Allen (not vice versa), but instead was immediately transferred to another non-equivalent position.  Performance issues that were never brought up before were cited for the first time at the meeting when Rodriguez returned from leave. Douglas cited Rodriguez's mental status as a reason she could not handle working

---

[4]  The evaluation is undated, so it is unclear when, if ever, the evaluation was filed with Human Resources and/or reviewed with Rodriguez.

[5]  If the record showed the Hospital believed that Rodriguez and Allen could not work together, even if that belief was unfounded, we could affirm the district court's grant of summary judgment.  *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).  However, "our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Id.* Viewing the record in the light most favorable to Rodriguez, while we agree with the dissent that Rodriguez testified that she and Allen were having communication problems before her leave, she also testified that she wanted to address the communication problems and was willing to go back to work with Allen.  Douglas, the decisionmaker, testified that Rodriguez expressed she no longer wanted to work with Allen, a statement that Rodriguez disputes and that is not reflected in contemporaneous notes from the meeting taken by Felix.  The record also shows that the performance problems addressed by the dissent were not longstanding, but rather first mentioned in an email by Allen to Human Resources only an hour before the January 4 meeting.  Because there are disputed issues of material fact underlying the Hospital's defense, it is for a jury to decide whether the defense is an honest explanation of the Hospital's behavior.

11

with Allen, but Rodriguez's doctor (who had treated her for anxiety and stress) cleared her to return to work. Under the particular facts and circumstances of this case, a reasonable jury could find that the Hospital interfered with Rodriguez's right to reinstatement when it transferred her to a lesser position upon her return from FMLA leave. *See Strickland*, 239 F.3d at 1208.

## B. Termination

Rodriguez's second theory of recovery is based on her allegation that the Hospital eventually terminated her in retaliation for taking FMLA leave. In an FMLA retaliation case, the "employee asserts that [her] employer discriminated against [her] because [s]he engaged in activity protected by the" FMLA. *Strickland*, 239 F.3d at 1206. The employee must show the employer's discrimination was intentional and was caused by the employee's exercise of a right protected by the FMLA. *Id.* at 1207. Where, as here, there is no direct evidence Rodriguez's termination was a result of retaliation for taking FMLA leave, we apply the *McDonnell Douglas* burden shifting analysis. *See id.* Under this framework, the employee must first establish a *prima facie* case of retaliation. *See id.* If the employee establishes a *prima facie* case, the burden then shifts to the employer to proffer a legitimate non-retaliatory reason for the adverse employment action. *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008).

12

If the employer meets its burden, the burden then shifts back to the employee to "show that the employer's proffered reason was pretextual by presenting evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* (quotations omitted). At this stage, the employee must "show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999).

Accepting Rodriguez's version of the facts, she was terminated on February 15, 2010, six weeks after her return from FMLA leave when Douglas told Rodriguez "you're done," gave her a separation agreement to sign, and took her badge and keys. Even assuming, *arguendo*, that Rodriguez alleged a *prima facie* case that she was terminated in retaliation for taking FMLA leave, Rodriguez cannot show the Hospital's legitimate, non-discriminatory reason for her termination was pretext for retaliation. The Hospital cites Rodriguez's inability to perform the essential functions of her job working for Allen as its legitimate, nondiscriminatory reason for her alleged termination.

On January 29, 2010, about four weeks after her return from FMLA leave, Rodriguez met with Felix and Jarren Short. At that meeting, Rodriguez admits

13

Felix told her that Allen did not want her back, and that she was supposed to be looking for an available position within the Hospital or the University of Miami system. Whatever Rodriguez's impression was regarding her ability to return to work with Allen, Rodriguez's impression does not square with the undisputed evidence that she was told to look for another position on January 29 because Allen no longer wanted to work with her.

Additionally, although Rodriguez asserts she checked the Hospital website and did not see any available positions, the Hospital submitted a spreadsheet detailing over 40 open administrative positions posted on the University of Miami career website from January to February 2010 for which it states Rodriguez was qualified. Rodriguez does not dispute the evidence that there were other administrative positions open for which she was qualified, and cannot create a genuine issue of material fact by denying the evidence exists. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (explaining a plaintiff must "present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext" and that "[m]ere conclusory allegations and assertions will not suffice").

Thus, there is evidence to support the Hospital's position that Rodriguez was terminated because she could no longer perform the essential function of her

14

job of working for Allen. Despite being given the opportunity to do so, Rodriguez did not locate another position within the Hospital or the University of Miami. Rodriguez has not shown that the Hospital's legitimate non-discriminatory reason for her termination was pretext for retaliation.

## III.  CONCLUSION

Genuine issues of material fact remain on Rodriguez's FMLA reinstatement claim. Thus, we REVERSE the district court's grant of summary judgment to the Hospital, and REMAND for further proceedings on that claim. We AFFIRM the district court's grant of summary judgment on Rodriguez's FMLA termination claim.

**AFFIRMED in part; REVERSED and REMANDED in part.**

WHITTEMORE, District Judge, dissenting:

While I agree that the district court's summary judgment against Rodriquez on her termination/retaliation claim should be affirmed, I conclude that her interference/reinstatement claim likewise fails and the district court's summary judgment in favor of the University on that claim should be affirmed.

Although Rodriquez established a *prima facia* case that she was not reinstated to the same position when she returned from FMLA leave, the University met its burden of showing that the reasons for its failure to reinstate her were wholly unrelated to her taking FMLA leave, consistent with its First and Sixth Affirmative Defenses of lack of causation and no right to reinstatement. *See Spakes v. Broward County Sheriff's Office,* 631 F.3d 1307, 1309 (11th Cir. 2011)(Our cases make clear that a causal nexus is not an element of an interference claim, but that the employer can raise the lack of causation as an affirmative defense.).

The undisputed facts, as set out in the district court's Final Summary Judgment, are that Rodriquez experienced a deteriorating relationship with her supervisor, Francetta Allen, causing Rodriquez to worry that she would lose her job. As a result, Rodriquez began suffering from anxiety and panic attacks and eventually contracted contagious dermatitis. According to the parties' Joint

16

Pretrial Statement, Rodriquez took medical leave under the FMLA due to this serious health condition. She remained on leave for the full twelve weeks permitted by law, and returned to work on January 4, 2010.[1]

Although she was scheduled to return to her original position with Allen, before returning to work, Rodriquez requested a meeting with Human Resources and Ms. Allen. According to Rodriquez:

> I was concerned about the fact that she wasn't communicating with me. I wanted to know what was going on with her because she wasn't communicating with me on any level at the end. So I needed to find out what was the issue, why she was behaving like this with me.
>
>  . . .
>
> So I asked [for] the meeting to address whatever issue was there, and move on, thinking that whatever have to be done, I am willing to do it, because I didn't want to lose my job.
>
> . . .
>
> I was ready, yeah. I was ready, because I like to - - - if anything was wrong with me, I need to know to fix it and move on. But I cannot fix anything because she wasn't communicating anything with me. Pretty much she was avoiding me all the time.

---

[1] According to Rodriquez' deposition testimony, when she returned to work, she was feeling much better but continued to suffer from anxiety and panic attacks, was still on medication, and was still treating with a psychiatrist and psychologist. The University contends that this demonstrates that she was unable to perform the essential functions of her original position, and therefore it was not obligated to reinstate her to her original position. The district court's judgment was not premised on this reasoning, however, but rather on the lack of causation between the failure to reinstate and Rodriquez' exercise of FMLA rights.

17

Exactly what was said at the meeting between Rodriquez, Allen, Errol Douglas and Maribel Felix is, as the majority notes, disputed. According to the University, Rodriquez did not want to work with Allen and requested a transfer. According to Rodriquez, she never requested a transfer. These disputed facts are immaterial, however, because there is no evidence that Rodriquez was re-assigned because she exercised her FMLA rights.[2]

Indeed, viewing the facts in a light most favorable to Rodriquez, on the day she returned to work after her FMLA leave, she was scheduled to be reinstated to her original position. However, on the morning she was to return to work, Rodriquez requested the meeting with HR and Allen. The discussion at the meeting had nothing to do with Rodriquez taking FMLA leave.  And, according to Rodriquez, Douglas re-assigned her because of the problems between her and Allen.  Even if Douglas' reason for re-assigning Rodriquez was based in part on his disputed contention that she requested a transfer, there is no evidence that Rodriquez' re-assignment was causally related to the exercise of FMLA rights.

---

[2] Summary judgment is appropriate where the pleadings and supporting materials establish that there are no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; *Celotex Corp.v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed. 2d 265 (1986). A factual dispute is "material" if it may determine the outcome under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 91 L.Ed. 2d 202 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment..." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

18

The FMLA grants employees such as Rodriquez the right to reinstatement at their former position or its equivalent upon return from leave. 29 U.S.C. § 2614(a)(1)(A); *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir.2001).  Her right to reinstatement was not absolute, however. *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1241 (11th Cir.2010). Rather, "[i]f an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable." *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d at 1208.

Here, the record demonstrates that Rodriquez experienced performance problems before taking FMLA leave. She admits that those problems started in June or July 2009, several months before she requested FMLA leave.  Rodriquez acknowledges that during the meeting with Human resources and Allen, Allen laid out specific pre-leave reasons for her disappointment, including Rodriquez' lack of initiative, failure to schedule meetings and the need to correct meeting minutes prepared by Rodriquez. According to Rodriquez, Douglas acknowledged the problems between Rodriquez and Allen and suggested a transfer if another position was available but if not, Rodriquez would return to her former position with a job performance plan.

19

It logically follows, therefore, in temporarily assigning Rodriquez to a lesser position, the University was motivated not by her taking FMLA leave but because of the problems between Rodriquez and Allen relating to Rodriquez' job performance. Similar to the employee in *Schaaf*, Rodriquez was therefore not entitled to reinstatement to her original position because she had performed poorly in her job before she took FMLA leave. Had she not taken leave, the University would have been justified in demoting and reassigning her, which is essentially what occurred. Or, she could have been placed on a performance plan, as Douglas had suggested, if no other positions were available. Accordingly, even accepting Rodriquez' version of what occurred and why, the undisputed facts demonstrate that the University's failure to reinstate her was wholly unrelated to her taking FLMA leave, as the district court correctly found.