[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 22 2001
THOMAS K. KAHN
CLERK

No. 99-14103

D.C. Docket No.98-00374-CV-B-S

RUSSELL STRICKLAND,

Plaintiff-Appellant,

versus

WATER WORKS AND SEWER BOARD OF
THE CITY OF BIRMINGHAM,

Defendant-
Appellee.

Appeal from the United States District Court
for the Northern District of Alabama

**(January 22, 2001)**

Before TJOFLAT, WILSON and FLETCHER[*], Circuit Judges.

---

[*] Honorable Betty B. Fletcher, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

TJOFLAT, Circuit Judge:

This is a Family and Medical Leave Act ("FMLA") case, 29 U.S.C. §§ 2601-2654 (1994).[1] The plaintiff claims that his employer terminated his employment after he left the job site because he was suffering a diabetic attack and could not perform the tasks assigned him, that such condition qualified him for FMLA leave, and that he is entitled to reinstatement and damages. On summary judgment, the district court held that the FMLA provided the plaintiff no relief because, at the time of his discharge, he had not exhausted the paid sick leave provided by his employer, and the Act provides no relief to an employee under such circumstances. Alternatively, the court, treating the plaintiff's complaint as alleging an FMLA "retaliation claim," as opposed to an "interference claim," found no merit in the plaintiff's allegations.

We conclude that the court erred in its first holding because whether an employee is entitled to receive paid sick leave is irrelevant to his right to FMLA protection. We also conclude that the court erred in reading the plaintiff's complaint as alleging only a retaliation claim. The plaintiff has made out an

---

[1] When suit was filed in the district court, the complaint contained, in addition to an FMLA claim, a claim for relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213 (1994). The district court granted the defendant summary judgment on that claim, and the plaintiff does not challenge that ruling in this appeal. We therefore do not address the ADA claim in this opinion.

interference claim, and it survives summary judgment because a "swearing match" between the plaintiff and his immediate supervisor concerning why the plaintiff left the job site creates a material issue of fact. We therefore vacate the district court's judgment and remand the case for further proceedings.

I.

Russell Strickland, who suffers from diabetes mellitus, had been an employee of the Water Works and Sewer Board of the City of Birmingham, Alabama ("Water Works Board" or "Board"), for eighteen years and held the position of Service Department Supervisor when the events leading to this law suit arose in March 1997. On Wednesday morning, March 5, Randolph Harmon, manager of the Service Department and Strickland's immediate supervisor, had a telephone conversation with Strickland concerning Strickland's failure to resolve a customer's complaint about the amount of a water bill that Harmon had asked him to settle by March 3. According to a note Harmon wrote following the phone conversation, Strickland responded that he had been "to [sic] busy, was not feeling well, [and] could not perform [the] inspection" necessary to resolve the complaint. Shortly after the phone call, Harmon met with Strickland to discuss the matter further. The parties dispute what was said at the meeting. Strickland claims that

he reiterated what he had said during the telephone conversation – that he had not resolved the customer's complaint because his diabetes had been interfering with his vision, which, in turn, prevented him from inspecting the customer's premises. Harmon, according to his affidavit and a memorandum he wrote after the meeting, says that Strickland became agitated when pressed on why he had not resolved the complaint, walked out of the meeting, and left the workplace without obtaining permission to leave. Strickland disputes this, saying that when the meeting ended he told Harmon – and, thereafter, a departmental employee responsible for recording work absences – that he had to take the rest of the day off because his diabetes was acting up.

Later in the day (after Strickland left), Harmon forwarded his memorandum recounting the meeting with Strickland to the Water Works Board's senior management. In the memorandum, Harmon recommended that the Water Works Board fire Strickland for "insubordination" and "failure to follow work orders and instructions."

The next morning, March 6, Harmon called Strickland at home. Harmon's version of the phone conversation is that he asked Strickland to come to the office "so that [they] could discuss the matter." Strickland's version is that Harmon wanted him to bring "a letter from [his] doctor" verifying his illness. Strickland

4

obtained the letter and gave it to Harmon when they met later that day; the letter confirmed that Strickland had diabetes.

Strickland did not work on March 6 or March 7; he had previously been granted permission to take those days off as "vacation." On March 7, Strickland received a letter from Gene Hanson, Interim General Manager of the Water Works Board, informing him that the Board was considering disciplinary action against him and offering him the opportunity to be heard in writing, or by appearing before Hanson on Tuesday, March 11. The letter identified as grounds for disciplinary action Strickland's failure to follow Harmon's instructions to resolve the customer complaint and his "walking off the job" on March 5 without permission.

When Strickland arrived at work on Monday, March 10, his next scheduled work day, Harmon informed him that he had been suspended. The following day, Strickland appeared in person at his disciplinary hearing before Hanson and a committee composed of the Water Works Board's senior management. Harmon was also present at the hearing, and both he and Strickland presented their versions of the events of March 5. In a letter dated March 14, the Board informed Strickland that he had been terminated, retroactive to March 5, for his conduct on that date, including his "insubordination and 'walking off the job.'" Strickland then filed this law suit.

The complaint alleged that, on March 5, Strickland had been unable to work due to a diabetic attack and that he informed Harmon,[2] as well as the Service Department employee responsible for recording work absences, about his condition. The complaint further alleged that on March 6, Strickland gave Harmon a letter from his doctor which confirmed that he was suffering from diabetes and that, after receiving the letter, Harmon told him that "[he] was terminated for 'walking off the job.'" Alleging that Strickland had been "terminated in violation of the FMLA," the complaint sought Strickland's reinstatement and damages.

The Water Works Board's answer denied Strickland's allegations regarding the events of March 5, and stated that Strickland "<u>never</u> informed the Water Works' management of his alleged diabetes or that it interfered with his ability to perform his job," that he "failed to request leave under the FMLA in accordance with the Water Works' Policy . . . and never filled out the form to request leave," and that the Board discharged Strickland because he "refused to follow [Harmon's] orders and instructions . . . and walked off the job without authorization from or notification to management after being insubordinate to [Harmon]."

---

[2] In the complaint, Harmon is referred to as Strickland's "supervisor" rather than by name.

On cross motions for summary judgment, the district court granted the Water Works Board's motion as to Strickland's FMLA claim on alternative grounds. First, the court held that since Strickland had not exhausted his paid leave time available under the Board's sick leave policy, he could not invoke the protections of the FMLA. Second, the court held that even if Strickland could demonstrate that his absence on March 5 was protected by the FMLA, he did not present sufficient evidence for a reasonable jury to find that his discharge was retaliatory; that is, that the Board fired him because he invoked the Act's protection. See Strickland v. Water Works and Sewer Bd., No. CV 98-B-0374-S (N.D. Ala. Sept. 15, 1999).

## II.

Summary judgment is proper only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir. 2000). After reviewing the record and the district court's analysis of Strickland's FMLA claim,

7

we conclude that the court misinterpreted the Act and, further, failed to recognize the existence of a material issue of fact that precluded summary judgment.

## III.

As its first ground for granting summary judgment, the district court held that Strickland's absence on March 5 could not qualify for FMLA protection because paid leave was still available to him under the Water Works Board's sick leave policy.[3] In the court's view, an employee who has not exhausted his paid sick leave – or, for that matter, any paid leave to which he may be entitled – cannot avail himself of the substantive protection of the FMLA implicated in this case. While some of the Act's text, considered in isolation, might suggest that an eligible employee whose leave qualifies as paid sick leave under his employer's sick leave policy cannot receive the benefits of the Act, such a reading is inconsistent with the purpose of the FMLA.

## A.

---

[3] Strickland had 16 hours of sick leave remaining under the Board's sick leave policy at the time he left work on March 5. Under that policy, employees are entitled to 24 hours per year of paid sick leave without having to submit a physician's statement verifying the illness.

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: . . . (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1) (1994).[4] The FMLA explicitly permits employers to provide covered leave on an unpaid basis. 29 U.S.C. § 2612(c). If an employer provides paid leave benefits to its employees, the Act provides that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for . . . any part of the 12-week period" of FMLA leave. 29 U.S.C. § 2612 (d)(2)(B).

## B.

The district court misinterpreted the FMLA as permitting employers with paid sick leave policies to choose whether an employee's FMLA-qualifying

---

[4] The Board does not dispute that, as an employer, it is subject to the FMLA and that Strickland is an "eligible employee" and thus entitled to the Act's benefits.

Strickland contends that he needed only a single day of FMLA leave–March 5–since he attempted to return to work on March 10, his next scheduled work day. Although this case does not present the question whether an eligible employee may take the available 12 weeks of FMLA leave one day at a time over the course of a year, the Board does not contend that the Act precluded Strickland from claiming only one day of covered leave. The FMLA provides that leave for a serious health condition need not be taken as a 12 week block but rather may be taken "intermittently or on a reduced leave schedule when medically necessary." 29 U.S.C. § 2612(b)(1).

9

absence will be either unpaid but protected by the Act, or paid but unprotected. The court's misinterpretation is understandable given the unartful and unfortunate use of language in the FMLA and its accompanying regulations indicating that paid leave may be used as a "substitute" for unpaid FMLA leave. See id.; 29 C.F.R. § 825.207(a) (2000) ("FMLA permits an eligible employee to choose to *substitute paid leave for FMLA leave*. If an employee does not choose to substitute accrued paid leave, the employer may require the employee to *substitute accrued paid leave for FMLA leave*.") (emphasis added). Particularly troubling is 29 C.F.R. § 825.207(e), which states:

> Paid vacation or personal leave, including leave earned or accrued under plans allowing "paid time off," may be substituted, at either the employee's or the employer's option, for any qualified FMLA leave. No limitations may be placed by the employer on substitution of paid vacation or personal leave for these purposes.

When looking at the these portions of the Act and regulations absent their context, it seems reasonable to interpret the substitution language as making paid sick leave and unpaid FMLA leave mutually exclusive – the employer or the employee must choose one type of leave or the other. A better interpretation of the relationship between paid sick leave benefits and unpaid FMLA leave, however, is informed by consideration of the context of the substitution provisions and the purpose of the FMLA.

10

With respect to an employer whose paid sick leave policy affords employees fewer than 12 weeks of paid leave, the Act permits the employer to provide "the additional weeks of leave necessary to attain the 12 workweeks of leave required under this subchapter . . . without compensation." 29 U.S.C. § 2612(d)(1). What this provision obviously means is that an employer cannot escape liability under the Act for the period during which the employee, whose leave qualifies under the FMLA, is receiving his wages in the form of sick (or other) pay.[5]

The meaning of the substitution language in the Act and regulations is further clarified by section 825.207(f) of the regulations. That section clarifies section 825.207(e), which the district court cites as exempting paid sick leave from the protections of the FMLA, by providing that "[i]f neither the employee nor the employer elects to substitute paid leave for unpaid FMLA leave under the above conditions and circumstances, the employee will remain entitled to all the paid leave which is earned or accrued under the terms of the employer's plan." 29 C.F.R. § 825.207(f). The plain meaning of this regulation is that an employee who has an FMLA-qualifying condition may take both 12 weeks of unpaid leave under

_____

[5] In other words, suppose an employee is paid for the first 6 weeks of a 12-week FMLA-qualifying leave. The Act covers not only the last 6 weeks of unpaid leave, but the first 6 weeks of paid leave as well.

11

the Act, plus any paid leave his employer provides unless the employee chooses, or the employer requires, that the two leave entitlements run concurrently.

These provisions, taken together, make clear that an employer who is subject to the FMLA and also offers a paid sick leave policy has two options when an employee's leave qualifies both under the FMLA and under the employer's paid leave policy: the employer may either permit the employee to use his FMLA leave and paid sick leave sequentially, or the employer may require that the employee use his FMLA leave entitlement and his paid sick leave concurrently. The Water Works Board adopted the latter option.[6] Neither Congress nor the Department of Labor could have intended, by using the substitution language, to allow employers to evade the FMLA by providing their employees with paid sick leave benefits.[7] Otherwise, when an employee misses work for an illness that qualifies under both his employer's paid sick leave policy and the FMLA, his employer could elect to

---

[6] The Water Works Board's sick leave policy provides that "[i]f a serious health condition exists that makes the employee unable to perform the employee's job, then that employee must use any available sick and vacation days first. Those days will be subtracted from the 12 weeks [of FMLA leave]. When all available sick and vacation days have been exhausted, the employee will be off without pay. The use of vacation and sick time applies to intermittent leave also."

[7] The legislative history to the provision of the FMLA providing leave for sick employees states that "it is unfair for an employee to be terminated when he or she is struck with a serious illness and is not capable of working." S. Rep. No. 103-3, (1993), reprinted in 1993 U.S.C.C.A.N. 3, 13.

12

have the absence count as paid sick leave rather than FMLA leave and would then be free to discharge him without running afoul of the Act.

The logical purpose underlying the substitution language in the FMLA and accompanying regulations is to protect employers who offer paid sick leave benefits to their employees from having to provide both the statutory 12 weeks of leave required by the FMLA and the paid leave benefit separately. If employers could not require a sick employee to use accrued paid sick leave and FMLA leave concurrently when the employee's condition qualifies for both, then the employee could choose to use his paid leave benefit and his 12 weeks of FMLA leave sequentially. That would unduly and unfairly burden employers.[8] To balance the needs of employers and sick employees, Congress intended that the FMLA provide employees with a minimum entitlement of 12 weeks of leave, while protecting employers against employees tacking their FMLA entitlement on to any paid leave benefit offered by the employer.

In sum, the district court erred in holding that an employee who has not exhausted his paid sick leave is not entitled to the protections of the FMLA. Given this error, we must consider the court's second ground for granting summary

_____

[8] The opening section of the FMLA makes clear that the purpose of the Act is "to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b).

judgment: that Strickland presented no evidence indicating that the Water Works Board fired him because he invoked the Act's protection.

IV.

In his complaint, Strickland alleged that "he was terminated in violation of the FMLA." The court construed this allegation as an attempt to state a claim of retaliatory discharge (rather than a claim for a substantive benefit provided by the Act), and assumed for sake of argument that the record established a prima facie case. The court then asked whether Strickland presented any evidence showing that the Water Works Board's reasons for terminating his employment – "insubordination and 'walking off the job'" on March 5 – were pretextual. Concluding that he had not, the court granted the Board's motion for summary judgment.

Strickland contends that his "Response to Defendant's First Motion for Summary Judgment" made it plain that, in addition to presenting a retaliatory discharge claim, he was alleging that the Board had violated his substantive rights under the FMLA by firing him while taking protected leave. He contends further that the evidence before the court would permit a reasonable jury to find that he was covered by the Act when he left the job site on March 5, and that consequently

he was entitled to reinstatement to his position when he returned to work on March 10.

A.

Among the substantive rights granted by the FMLA to eligible employees are the right to "12 workweeks of leave during any 12-month period . . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee," 29 U.S.C. § 2612(a)(1), and the right following leave "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position, 29 U.S.C. § 2614(a)(1). To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, see 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, see 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against

employees . . . who have used FMLA leave.").[9] To state a claim of interference

with a substantive right, an employee need only demonstrate by a preponderance of

the evidence that he was entitled to the benefit denied. O'Connor v. PCA Family

Health Plan, Inc., 200 F.3d 1349, 1353-54 (11th Cir. 2000); King v. Preferred

Technical Group, 166 F.3d 887, 891 (7th Cir. 1999). In contrast, to succeed on a

retaliation claim, an employee must demonstrate that his employer intentionally

discriminated against him in the form of an adverse employment action for having

exercised an FMLA right. King, 166 F.3d at 891. In other words, a plaintiff

bringing a retaliation claim faces the increased burden of showing that his

employer's actions "were motivated by an impermissible retaliatory or

discriminatory animus." Id. While we agree with the district court, for the reasons

discussed below, that Strickland could not survive summary judgment on his

---

[9] While the FMLA does not clearly delineate these two claims with the labels
"interference" and "retaliation," those are the labels courts have used in describing an
employee's claims under the Act. See, e.g., O'Connor v. PCA Family Health Plan, Inc., 200
F.3d 1349, 1352 (11th Cir. 2000).
   The relevant part of the Act, 29 U.S.C. § 2615, reads as follows:
        (a) Interference with rights
          (1) Exercise of rights
          It shall be unlawful for any employer to interfere with, restrain,
        or deny the exercise of or the attempt to exercise, any right
        provided under this subchapter.
          (2) Discrimination
          It shall be unlawful for any employer to discharge or in any
        other manner discriminate against any individual for opposing any
        practice made unlawful by this subchapter.

16

retaliation claim, we conclude that the court erred in not considering his interference claim – a claim as to which summary judgment would have been inappropriate.

B.

When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, we apply the same burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d. 668 (1973), for evaluating Title VII discrimination claims. See Brungart v. Bellsouth Telecomm. Inc., 231 F.3d 791, 798 (11th Cir. 2000). In order to state a claim of retaliation, an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000). Strickland could not survive summary judgment on his retaliation claim because he failed to establish the third element of a prima facie case – that the Water Works Board fired him for engaging in protected activity.

In his complaint, Strickland alleged that, before leaving the workplace on March 5, he told his supervisor, Harmon, that he needed FMLA leave because he

17

was suffering a diabetic attack. The record presented to the district court on summary judgment, however, contained no support for this allegation; nothing in Strickland's affidavits or the other materials before the court would permit a jury to find that Harmon or anyone else employed by the Board had notice that Strickland was invoking the protection of the FMLA when he left work that day. Nor did Strickland refer to the FMLA at any time prior to the Board's March 14 decision to discharge him.

Strickland contends that this absence of notice is not fatal, because the short time lapse between his March 5 leave and the Board's decision to fire him, a mere nine days, constitutes circumstantial evidence that the Board was retaliating against him for seeking FMLA protection and thus satisfies the third element of a prima facie case. Brungart, 231 F.3d at 799 (citing Bechtel Constr. Co. v. Secretary of Labor, 50 F.3d 926, 934 (11th Cir. 1995) ("Proximity in time is sufficient to raise an inference of causation.")). Such evidence cannot satisfy the third element in a case, like the one here, in which the "unrebutted evidence [is] that the decision maker did not have knowledge that the employee [had engaged, or was attempting

18

to engage,] in protected conduct." Id.[10]  As we said in Brungart, "[a] decision maker cannot have been motivated to retaliate by something unknown to him." Id.

## C.

Although the record does not support a claim for retaliatory discharge, it does present an interference claim sufficient to withstand summary judgment.  As we said above, to state a claim that his employer has interfered with a substantive FMLA right, a plaintiff need only demonstrate that he was entitled to but denied the right.  He does not have to allege that his employer intended to deny the right; the employer's motives are irrelevant.

Strickland's second theory of recovery is based on the substantive FMLA right to reinstatement; an employee returning from covered leave is entitled to be restored to his former position or its equivalent.  29 U.S.C. § 2614(a)(1); O'Connor, 200 F.3d at 1354.  An employer can deny the right to reinstatement, however, if it can demonstrate that it would have discharged the employee had he not been on FMLA leave.  O'Connor, 200 F.3d at 1354; see 29 U.S.C. § 2614(a)(3)

---

[10]  We read Brungart as holding that close proximity in time between the protected activity and the adverse employment decision does not, standing alone, establish the third element of a prima facie case.  Instead, the close proximity merely buttresses other evidence (direct or circumstantial) in the case indicating that the decision maker had notice of the protected activity.

19

(qualifying the right to reinstatement so that an employee returning from FMLA leave is not entitled to "any right, benefit, or position of employment other than any . . . to which the employee would have been entitled had the employee not taken the leave").[11]  In other words, if an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable.

The Water Works Board relies on this affirmative defense in contesting Strickland's interference claim.  It says that its reason for discharging Strickland had nothing to do with his purported FMLA leave; it terminated his employment on March 5 for failing to follow Harmon's directions in handling the customer's water-bill complaint.  If the record established without dispute that the Board discharged Strickland for this reason, we would affirm.  The problem is that the letter the Board wrote to Strickland on March 14 notifying him of his termination stated that "your actions of March 5, 1997, including your insubordination and 'walking off the job' are considered tantamount to your resignation of employment and therefore you are being separated effective that date."  The letter made no

---

[11] The Department of Labor has issued a regulation interpreting this provision of the FMLA so as to allow an employer to escape liability on an interference claim if the employer can demonstrate that the employee who was denied reinstatement after FMLA leave would have been discharged even if he had not taken FMLA leave.  See 29 C.F.R. § 825.216(a).

mention of Strickland's purported unsatisfactory handling of the customer complaint.

A reasonable jury could find that the Board based its decision on Harmon's version of what took place on March 5, or it could choose to accept Strickland's version. If it chose the latter, it would find that Strickland was having a diabetic attack that day which prevented him from doing his job, that he told Harmon that he had to leave because of the attack, and that, before he left the job site, he communicated this to the departmental employee responsible for recording work absences. If a jury made these findings, the outcome of the case would turn on a question of law: to wit, whether Strickland gave sufficient notice to his employer to invoke the substantive protections of the FMLA.

When an employee's FMLA leave is "foreseeable based on planned medical treatment," the Act requires the employee to "provide the employer with not less than 30 days' [advance] notice," if practicable. 29 U.S.C. § 2612(e)(2). Where an employee's need for FMLA leave due to a serious medical condition is unforeseeable the advance notice requirement does not apply, and we have said that "the employee need only provide [his] employer with notice sufficient to make the employer aware that [his] absence is due to a potentially FMLA-qualifying reason." Gay v. Gilman Paper Co., 125 F.3d 1432, 1436 (11th Cir. 1997). The

21

Code of Federal Regulations makes clear that an employee taking unforeseeable leave "need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed."  29 C.F.R. § 825.303(b).  Once an employee taking unforeseeable leave informs his employer that potentially FMLA-qualifying leave is needed, the regulations place on the employer the burden of ascertaining whether the employee's absence actually qualifies for FMLA protection.  See id. ("The employer will be expected to obtain any additional required information through informal means.").[12]

If an employee tells his employer that he must leave work because he is suffering a debilitating diabetic attack, the employee has given notice of a need for unforeseeable leave sufficient to shift to the employer the burden of making further inquiry into whether the absence truly qualifies for FMLA protection.  If Strickland

---

[12] The FMLA includes a mechanism by which an employer may ascertain whether an employee's absence qualifies as FMLA leave; specifically, "[a]n employer may require that a claim that an employee is unable to return to work because of the continuation, recurrence, or onset of [a] serious health condition . . . be supported by . . . a certification issued by the [employee's] health care provider."  29 U.S.C. § 2614(c)(3)(A).  The federal regulation interpreting the certification provision of the Act states that if the certification is inadequate, "[t]he employer shall . . . provide the employee a reasonable opportunity to cure any such deficiency."  29 C.F.R. § 825.305(d).  The Board does not contend that it requested, or that Strickland failed to provide, certification that his absence on March 5 was for an FMLA-covered condition.  Even if Harmon's purported request for a note from Strickland's physician is deemed a request for medical certification, the Board does not contend, and there is no evidence to indicate, that it considered the doctor's note inadequate.

gave Harmon the notice he says he gave before leaving work on March 5, he would be entitled to the reinstatement benefit the FMLA provides.

## V.

The district court erred in granting the Water Works Board's motion for summary judgment because Strickland has established an interference claim sufficient for submission to a jury. The district court's judgment is therefore vacated and the case is remanded for further proceedings not inconsistent with this opinion.

VACATED and REMANDED.