[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10591
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-23454-MGC

BALDOMERO GUASCH,

Plaintiff-Appellant,

versus

CARNIVAL CORPORATION,
a foreign profit corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 8, 2018)

Before TJOFLAT, WILLIAM PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Baldomero Guasch, a disabled former employee of Carnival Corporation ("Carnival"), appeals the district court's grant of summary judgment in favor of Carnival in his disability discrimination suit. First, Guasch argues that he made out a *prima facie* case of disability discrimination under the Florida Civil Rights Act ("FCRA") because his supervisors refused to reduce the downtime in his phone productivity or grant full leave time when requested because they knew of his disabled status.[1] He also argues that the reason Carnival provided for its termination decision—that he had continuously violated company policy with excessive downtime—was merely a pretext for discrimination, because he had demonstrated excellent phone productivity for 15 years prior to his termination. Second, Guasch argues that he has legitimate Family and Medical Leave Act ("FMLA") claims for interference and retaliation. As to his interference claim, Guasch argues that Carnival continued to reject his doctor's paperwork and his legitimate requests to adjust his downtime numbers for various technical issues, extending the amount of time that it appeared he had excessive downtime violations. As to his retaliation claim, Guasch argues that the close proximity in

---

[1] Guasch originally brought two claims under the FCRA for disparate treatment and hostile work environment. However, in its summary judgment order, the district court construed both of these claims as one FCRA claim. Because Guasch does not challenge this construction on appeal, any argument regarding the separate, individual claims is abandoned. *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1375 (11th Cir. 1983).

time between his leave requests and his termination indicates that Carnival was retaliating against him for taking leave.

## I.    THE FLORIDA CIVIL RIGHTS ACT

We review the grant of a summary judgment motion *de novo*.  *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).  Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, presents no genuine dispute of any material fact.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Under Local Rule 56.1 of the Southern District of Florida, a party moving for summary judgment must also submit a statement of material facts.  (S.D. Fla. L.R. 56.1).  If the nonmovant fails to respond, the movant's statement will be deemed admitted. (*Id.*).  However, the summary judgment motion itself, even if unopposed, must be considered on its merits.  *Trs. of Cent. Pension Fund of Int'l Union of Operating Engineers and Participating Empl'rs v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004).

We have held that "an argument that was not raised in the district court below is left primarily to the discretion of the appellate court" unless "refusal to consider it would result in a miscarriage of justice."  *Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1250 (11th Cir. 2012).  A miscarriage of justice would likely result if the record supported the party's argument.  *Id.*

3

The FCRA makes it unlawful for employers with 15 or more employees to discriminate against an employee because of such individual's handicap.  *See* Fla. Stat. §§ 760.01(b), 760.10(1)(a).  Claims under the FCRA are analyzed under the same framework as claims brought under, in relevant part, the Americans with Disabilities Act ("ADA").  *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007).

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

We employ the burden-shifting analysis from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to analyze ADA claims.  *See Holly*, 492 F.3d at 1255. Under this framework, the plaintiff must establish a *prima facie* case of disability discrimination.  *Id.* at 1255-56.  To prove a *prima facie* employment discrimination case under the ADA, and the FCRA, the employee may show that (1) he has a disability, (2) he is a qualified individual for the position in question, and (3) the employer discriminated against him *because of* his disability.  *Holly*, 492 F.3d at 1255 (emphasis added).  With respect to the latter prong, an employer cannot be liable under the ADA for firing an employee when it indisputably "had no

4

knowledge of the disability." *See Morisky v. Broward Cty.*, 80 F.3d 445, 448 (11th Cir. 1996) (internal quotation omitted).

If a plaintiff makes out a *prima facie* case, and the defendant establishes a legitimate, nondiscriminatory reason for its allegedly discriminatory action, the plaintiff must show that such a reason is merely a pretext for its true discriminatory purpose. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08 (1993). To prove that the legitimate, nondiscriminatory reason is a pretext, the plaintiff must show that the reason is both false and that the underlying discriminatory reason is impermissible. *See id.* at 515-16.

The district court properly granted summary judgment to Carnival on Guasch's FCRA claim because he presented no evidence to establish that his supervisors knew of his disabling condition. Moreover, even if Guasch established a *prima facie* case to support his FCRA claim, he failed to show that Carnival's legitimate and nondiscriminatory reason for firing him—that he had continuously violated the company phone productivity policy—was a pretext for discrimination, because this justification was both a permissible reason to fire him, and it was not false.

## II.    FAMILY AND MEDICAL LEAVE ACT

The FMLA grants employees periods of leave for certain family or health-related events. 29 U.S.C. § 2612(a)(1). The statute creates two types of claims:

5

(1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the FMLA, and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the FMLA. *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001).

To establish that an employer interfered with the employee's FMLA rights, an employee need only show by a preponderance of the evidence that he was entitled to a benefit that was denied by his employer. *Id.* at 1206-07. The employer's motives in such a claim are irrelevant. *Id.* at 1208.

To establish a retaliation claim under the FMLA, an employee must demonstrate that his employer intentionally discriminated against him for exercising a right guaranteed under the FMLA. *Strickland*, 239 F.3d at 1207. "Unlike an interference claim, an employee bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1267-68 (11th Cir. 2008) (quotations omitted). In the absence of direct evidence of retaliatory intent, we apply the burden-shifting framework articulated in *McDonnell Douglas*. *Id.* at 1268. To establish a *prima facie* case of FMLA retaliation, an employee may show that (1) he engaged in statutorily

6

protected activity; (2) he suffered an adverse action; and (3) the decision was causally related to the protected activity.  *Id.*

Proximity in time between the protected activity and the materially adverse action does not, by itself, establish the causal connection required by the third element of the *prima facie* case, but it can buttress other evidence in the case, and indicate whether the decision-maker had notice of the protected activity. *Strickland*, 239 F.3d at 1207 n.10.  The Supreme Court has indicated that the temporal proximity between an employer's knowledge of protected activity and an adverse action must be very close.  *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citations and quotations omitted).  In *Breeden*, the Supreme Court cited cases with approval that held a three- to four-month disparity was insufficient to show a causal connection.  *See id.* (citations omitted).

If the employee successfully demonstrates a *prima facie* case of FMLA retaliation, the burden then shifts to the employer to articulate a legitimate reason for the adverse action.  *Martin*, 543 F.3d at 1268.  Once an employer articulates a legitimate non-discriminatory reason, the employee then must show that the employer's proffered reason was pretextual.  *Id.*

The district court properly granted summary judgment to Carnival on Guasch's FMLA claims because neither a retaliation or interference claim would survive.  As to his interference claim, Guasch was not denied an entitled benefit,

7

and as to his retaliation claim, he failed to show a causal connection between his leave requests and the adverse action.  Indeed, as set forth in Carnival's Statement of Undisputed Facts, Guasch, in his deposition, acknowledged that he had no knowledge that Borrera, Perez, or White (his supervisors) were aware of his disability.[2]  [Statement of Undisputed Facts, Doc. 23 at 10 ¶33 (citing Plaintiff's Dep., Vol. I at 181:3-11, 187:8-10, 211:3-21)].  Additionally, Guasch failed to establish pretext in his retaliation claim because no evidence showed that Carnival's reason for firing him was false or impermissibly based on his requests for FMLA leave.

    **AFFIRMED.**

---

[2]    On appeal, in his Reply brief [page 5], Guasch cites another page of his own deposition [page 21] to support his bald assertion that the supervisors did have knowledge of his disability. However, the page he cites merely refers to the occasion when his supervisors became aware of the hospitalization of Guasch's partner—not anything about Guasch's medical condition.