[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14706
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-01355-JEO

LUCILLE YVETTE ARRINGTON,

Plaintiff-Appellant,

versus

ALABAMA POWER COMPANY,
SOUTHERN COMPANY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(April 18, 2019)

Before MARCUS, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Lucille Yvette Arrington, proceeding *pro se*, appeals the dismissal of her claims for discrimination, hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA"), as well as her personal injury claim for "workplace hazard." On appeal, Plaintiff recounts the events that led to her alleged constructive discharge and asserts that she established a *prima facie* case of retaliation.[1] After careful review, we affirm the judgment of the district court.

## I.    BACKGROUND

Plaintiff, an African-American woman, filed the present suit in the Eastern District of Virginia, alleging claims against Defendant Alabama Power Company.[2] Upon Defendant's motion, the case was transferred to the Northern District of Alabama. Defendant filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court dismissed Plaintiff's complaint without prejudice and afforded her twenty-one days to file an amended complaint.

Plaintiff then filed an amended complaint in which she characterized her claims as "Title VII, ADA discrimination, harassment, hostile work environment,

---

[1] Plaintiff further suggests the magistrate judge who presided over her case had a conflict of interest. We find this allegation meritless.

[2] Plaintiff also asserted claims against Southern Company, Defendant's parent company. The district court later dismissed Southern Company as a defendant. Plaintiff does not challenge this ruling on appeal.

retaliation, FMLA, workplace hazard." She asserted that Defendant retaliated against her for reporting a white male's violations of company policy, discriminated against her based on her race and transferred her to a "hostile and harassing work environment," blocked her from obtaining a new position, caused her to develop asthma, removed her from her supervisory role, gave her unmerited low performance ratings and negative referrals, demoted her, and subjected her to "harassing comments and actions."

In particular, Plaintiff alleged that in October 2013, she "reported [a white male coworker's] sexually explicit policy violations." She asserted that the "retaliation and discrimination began" one month later, when she was transferred from her supervisor position at Defendant's Metro Central office to a supervisor position at Defendant's Columbiana office—a rural, all-white office with a history of racism. The employee who decided to transfer Plaintiff explained, "Going to Columbiana will allow you to function as a Manager being totally responsible for all aspects of the office." Plaintiff received a pay raise based on her performance at the Metro Central office.

After she began working in Columbiana, Plaintiff developed "Toxic Mold Syndrome" and experienced headaches, nausea, and shortness of breath. Defendant changed the air filters and sprayed deodorizer when Plaintiff first

3

reported the mold issue, but waited seven months before working on the ducts and conducting an air quality test.

On May 30, 2014, Plaintiff's mother passed away. Three days later, Plaintiff's white supervisors brought her a large tray of chicken for her family. Plaintiff's supervisors emailed Plaintiff while she was on bereavement leave, asking about reports she had told them she was working on while her mother was in the hospital. Plaintiff replied that she did not complete them because she had not anticipated her mother's condition worsening. Plaintiff ultimately was held accountable for her supervisors' "failure to work the reports during the death of her mother." None of Plaintiff's supervisors attended her mother's funeral, even though it was a long-standing tradition in the office for supervisors and managers to attend the funerals of employees' immediate family members. By contrast, when a white subordinate's father passed away, Plaintiff was required to attend the funeral, and Plaintiff's supervisors ensured that other employees would complete the subordinate's work while she was on leave.

In August 2014, Plaintiff was given an overall mid-year rating of "Needs Improvement." One month later, Plaintiff received medical attention due to symptoms she developed as a result of exposure to mold in the office. Plaintiff's office had the highest concentration of toxic mold in the building. After staying home sick for several weeks, Plaintiff reported to the Pelham Business Office on

4

September 28, 2014. Her supervisor instructed her to return to the Columbiana office, where she became ill again.

In October 2014, Plaintiff's manager informed her that she would be working in the Pelham office while they worked to address the mold issues in the Columbiana office. On December 9, 2014, the Area Manager, a white female, met with Plaintiff. The Area Manager said that Plaintiff was being transferred to an Assistant Manager position (a position above Plaintiff's current post), but that she would keep her title as supervisor and would not receive a pay raise because of her performance reviews.

On December 12, all employees except Plaintiff received an invitation to the office Christmas party. Two days later, Plaintiff called the employee concerns line to report harassment, retaliation, and discrimination. On December 16, the Area Manager informed Plaintiff that she was rescinding the offer for Plaintiff to become an Assistant Manager, and she would be reaching out to find Plaintiff a new position with Defendant. Two days later, Plaintiff discussed her complaint with a Concerns Program Manager, who encouraged Plaintiff to advise him if her supervisors created any hardships for her.

In January 2015, Plaintiff was told she was being removed from her supervisory position and that she would be placed "in an individual contributor role." She was also told that she would be given one year to find a new position or

5

be "rolled back" to a Senior Customer Service Representative. The same month, she received an annual performance rating of "needs improvement" and a bonus reduction of $2,934.75.

On January 14, Plaintiff met with a woman who worked in the Employee Concerns Program and recounted the events of the prior fourteen months. Upon being questioned by her manager, Plaintiff admitted she had filed the complaint. Over the next several months, Plaintiff "continue[d] to experience isolation by being left out of meetings, blocked from new job opportunities internally as well as externally because of negative feedback from [her supervisor] or his failure to respond to request[s] and no support for career advancement."

After being ill for six days in January 2016 due to stress-induced asthma attacks, Plaintiff emailed her supervisor requesting a personal leave of absence. Plaintiff's supervisor informed her that she was not allowed to take personal leave because she was on FMLA leave. He attempted to coerce her into requesting a medical leave of absence. A white Disability Management representative also "tried to coerce . . . Plaintiff to change the type of Leave to Medical and questioned the FMLA paperwork and [doctor's] excuse as if it were not legitimate." Plaintiff alleged that Defendant's "disregard for her health and all of the preceding wrongful retaliatory, harassing and discriminatory actions . . . made the working conditions so intolerable that . . . Plaintiff felt constructively forced to resign."

6

Defendant filed a motion to dismiss the amended complaint. The district court granted the motion, concluding that Plaintiff failed to allege facts that would support plausible claims under Title VII, the ADA, or the FMLA. This appeal followed.

## II.    DISCUSSION

We review the grant of a motion to dismiss *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1337 (quotation marks omitted). "A facially plausible claim must allege facts that are more than merely possible." *Id.* When allegations are more conclusory than factual, the court need not assume their truth. *Id.*

As an initial matter, Plaintiff has abandoned the majority of her claims on appeal by failing to present legal arguments as to how the district court erred in dismissing her claims. Although we liberally construe briefs filed by *pro se* litigants such as Plaintiff, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). For the most part, Plaintiff merely realleges the facts she asserted before the district court, while never explaining how these facts amount to a plausible claim under

7

Title VII, the ADA, or the FMLA. Instead, Plaintiff simply states that Defendant's disregard for her health and other unlawful actions violated her civil rights. While Plaintiff also cites to caselaw and sections from the U.S. Code and the Code of Federal Regulations, these citations, standing alone, do not constitute legal arguments.

Even ignoring that significant lapse on her part, and as the district court's order explains, Plaintiff's amended complaint fails to plausibly allege that she was retaliated against for engaging in protected activity or that any claimed discriminatory and harassing actions were connected to her race or disability.

First, Plaintiff failed to plead a plausible retaliation claim. To establish a retaliation claim under Title VII, a plaintiff must prove that she engaged in statutorily protected activity, that she suffered a materially adverse action, and that there was a causal relation between the complaint and the adverse action. *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016). Here, Plaintiff alleged that, after she complained that a fellow employee had violated the company's policy prohibiting the possession of explicit sexual materials, Defendant retaliated against her by giving her a promotion to a higher position at a different location. Although Plaintiff argued that the promotion was retaliatory because a white subordinate subsequently harassed her, she declined her superiors' assistance when they offered to help, insisting that she wanted to function as a

8

leader in her office.  Obviously, Plaintiff's promotion to a higher position within the company did not constitute an adverse action.

Plaintiff's other retaliation claims also failed because none of Plaintiff's allegations suggested that she suffered consequences as a result of engaging in protected activity.  For example, while the Area Manager rescinded a job offer two days after Plaintiff called the employee concerns line, Plaintiff did not allege any facts showing that the Area Manager was aware that Plaintiff had made a complaint.  Instead, her amended complaint indicated that the Concerns Program and her managers did not become aware of her call until after the Area Manager had rescinded the job offer.

As for her race-based disparate-treatment claims, Plaintiff failed to plead a *prima facie* claim.  "A plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).  Here, even assuming without deciding that one or more of the actions about which Plaintiff complains qualify as adverse employment actions, Plaintiff failed to plead a prima facie case of disparate treatment because she did not allege that a similarly situated employee outside of her protected class was treated more favorably.  *See Crawford v. Carroll*, 529 F.3d

961, 970 (11th Cir. 2008).  Nor did Plaintiff argue that she met her burden by identifying direct evidence of discriminatory intent, *Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 921–22 (11th Cir. 2018), or by identifying a "convincing mosaic" of circumstantial evidence that warranted an inference of intentional discrimination.  *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

Similarly, none of Plaintiff's allegations met the standard for establishing a hostile work environment.  "[T]o prove a hostile work environment under [Title VII], a plaintiff must show that her employer discriminated because of her membership in a protected group, and that the offensive conduct was either severe or pervasive enough to alter the terms or conditions of employment . . . ."  *See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010)).  A work environment is hostile if "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  A work environment is sufficiently severe or pervasive only if it is both subjectively and objectively hostile, meaning that the employee subjectively perceives, and a reasonable employee would perceive, the environment as abusive.  *Id.* at 1285.  In

10

assessing the objective component, we consider four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc)).

Here, none of these factors suggest that Plaintiff was subjected to a workplace permeated with severe or pervasive discriminatory conduct. Although she consistently identified the race of her coworkers and supervisors in her amended complaint, the mere fact that these individuals were white did not plausibly show that Plaintiff suffered any discrimination or harassment on the basis of her race. For example, the fact that Plaintiff's supervisors did not attend her mother's funeral, while Plaintiff was required to attend a subordinate's father's funeral, does not plausibly amount to racial discrimination. Nor does the bare fact that Plaintiff's supervisors brought Plaintiff a platter of chicken after her mother passed away indicate that she was treated differently based on her race. Here, Plaintiff has not alleged facts supporting her suggestion that the supervisors' gesture was intended to be or was, in fact, tied to her race.

Moreover, Plaintiff's allegations indicate that, at most, she experienced isolated incidents that caused her offense, but that did not have any direct effect on

11

her job performance.  That being so, Plaintiff has necessarily failed to demonstrate that she was constructively discharged—a claim that she makes only as a conclusory allegation.  *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001) ("The standard for proving constructive discharge is higher than the standard for proving a hostile work environment.").

Plaintiff also failed to allege facts showing that she was discriminated against based on a disability.  To establish an ADA discrimination claim, a plaintiff must show that she was disabled, she was a qualified individual, and she was discriminated against because of her disability.  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007).  Plaintiff alleged that on-the-job exposure to toxic mold caused her to suffer from toxic mold syndrome, asthma, and other disabilities.  However, she did not allege any facts plausibly showing that Defendant discriminated against her because of these disabilities.[3]  Instead, her allegations that Defendant replaced air filters, completed duct work, and transferred her out of the affected office show just the opposite—that it sought to accommodate her disabilities.

Plaintiff's complaint identified a personal injury claim for "workplace hazard" based on her toxic mold exposure, but the district court correctly noted

---

[3]  We assume for the sake of argument that Plaintiff was disabled within the meaning of the ADA.

that there is no such claim under federal or state law.  Plaintiff's sole remedy for her toxic mold exposure lies under Alabama's Workmen's Compensation Act.  *See* Ala. Code §§ 25-5-52, 25-5-53, 25-5-113, 25-5-114 (providing that employers may not be held civilly liable for occupational diseases originating in employment, except as provided in the Act).  As Plaintiff did not raise a Workmen's Compensation Act claim, much less plead a plausible claim under the Act, the district court correctly dismissed her personal injury claim.

Finally, Plaintiff's conclusory allegations in her amended complaint were insufficient to plead an FMLA violation.  The FMLA grants employees periods of leave for certain family or health-related events and the right to be restored to a position of employment or an equivalent position following leave.  *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001).  Under the FMLA, a plaintiff may assert two types of claims.  *Id.*  For an interference claim, a plaintiff must establish that an employee interfered with FMLA rights by showing that she was entitled to a benefit that her employer denied.  *Id.* at 1206−07.  For a retaliation claim, a plaintiff must show that her employer intentionally discriminated against her for exercising an FMLA right.  *Id.*  Here, we cannot discern any allegation that would plausibly support a claim for either FMLA interference or retaliation.  Indeed, Plaintiff alleged that she was

13

granted FMLA leave and failed to allege any facts supporting an inference that Defendant discriminated against her for taking that leave.

## III.  CONCLUSION

In sum, Plaintiff abandoned the majority of her claims on appeal, but even if she had not, the district court properly dismissed her amended complaint. Accordingly, the judgment of the district court is affirmed.

**AFFIRMED.**