[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————————

No. 22-10228

Non-Argument Calendar

————————————————

MANUEL CHAVOUS,

Plaintiff-Appellant,

*versus*

CITY OF SAINT PETERSBURG,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cv-01614-KKM-JSS

————————————————

Before BRASHER, ABUDU, and MARCUS, Circuit Judges.

PER CURIAM:

Manuel Chavous appeals the district court's grant of summary judgment to the City of Saint Petersburg (the "City"), his former employer, on his claims for interference and retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Florida Workers' Compensation Act ("FWCA"), Fla. Stat. § 440.205. On appeal, he argues: (1) the court erred in concluding that he failed to state a *prima facie* case of interference under the FMLA, and erred in finding that the City's reason for terminating him was unrelated to his FMLA leave; (2) the court erred in concluding that he failed to state a *prima facie* case of retaliation under the FMLA, since the temporal proximity of his FMLA leave and his termination stated a *prima facie* case under *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), and erred in finding that he failed to show that his termination was pretextual; and (3) the court erred in granting summary judgment on his FWCA retaliation claim for the same reason that it granted summary judgment on his FMLA retaliation claim. After careful review, we affirm.

I.

We review *de novo* a district court's grant of summary judgment, viewing the evidence in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party. *McAlpin v. Sneads*, 61 F.4th 916, 927 (11th Cir. 2023). Summary judgment is appropriate when "there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The movant bears the initial burden "of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once a movant satisfies its initial burden under Rule 56, the burden shifts to the nonmovant to demonstrate that there is a material issue of fact that precludes summary judgment. *Id.* "'A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'" *Id.* (quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.

First, we are unpersuaded by Chavous's claim that the district court erred in concluding that he failed to state a *prima facie* case of interference under the FMLA. The FMLA generally creates two types of claims, interference claims and retaliation claims. 29 U.S.C. § 2615(a)(1)–(2); *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 n.9 (11th Cir. 2001). An employee establishes a *prima facie* case of FMLA interference when he

shows that he was "denied a benefit to which [he] was entitled under the FMLA." *McAlpin*, 61 F.4th at 933 (quotations omitted).

An employee's primary benefit under the FMLA is his entitlement to 12 weeks of leave during a 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D). When an employee takes FMLA leave, he is entitled to be restored to the same or an equivalent position. *Id.* § 2614(a)(1).

In an FMLA interference claim, an employer's motives for denying an employee an FMLA benefit to which he is entitled are generally irrelevant. *McAlpin*, 61 F.4th at 933. However, where an employer shows that its motives were "wholly unrelated" to the employee's FMLA leave, the employer is not liable. *Strickland*, 239 F.3d at 1208. So, when an FMLA interference claim is based on an employee's termination, an employer may defend against the claim by showing that it would have terminated the employee regardless of his request for FMLA leave. *McAlpin*, 61 F.4th at 933.

Here, the district court did not err in finding that Chavous failed to state a prima facie case of FMLA interference. For purposes of this claim, there are two relevant terminations, July 26, 2018, and August 27, 2018. As for the first termination, the undisputed record reflects that the City based its decision to terminate him on his decision to take 17 days of "unscheduled leave," after Chavous was involved in a car accident. However, once Chavous's doctor finally submitted the certification necessary for the City to properly consider Chavous's FMLA leave request for these 17 days

-- on July 27, the very last day allowable under the City's Rules and Regulations -- the City reinstated him to his prior position at a hearing on August 7, 2018 and told him to return to work the next day. What's more, it awarded him back pay from the date his FMLA leave ended, July 26, 2018, until August 7, 2018, the day before he was supposed to return to work. Because Chavous's first termination was ultimately rescinded and he was made whole, he was not "denied a benefit to which [he] was entitled under the FMLA." *McAlpin*, 61 F.4th at 933.

As for his second termination on August 27, 2018, Chavous was not on FMLA leave -- his FMLA leave had ended on August 8, but he had still not returned to work. Chavous argues on appeal that his doctor told him his full recovery from the accident could take up to four weeks from July 12, 2018. But as the undisputed record reveals, his doctor listed his FMLA leave from July 12, 2018, to July 26, 2018, and added that Chavous "may return sooner as [symptoms] improve." Nevertheless, Chavous did not request additional FMLA leave following July 26, 2018. As a result, his second termination on August 27 also did not "den[y] [him] a benefit to which [he] was entitled under the FMLA." *Id*.

To the extent Chavous claims that there is a genuine issue of material fact about whether he was restored to his pre-FMLA position on August 7, we disagree. Chavous testified at his deposition that he could not recall being notified that his employment was reinstated, but the undisputed evidence shows that at a hearing on August 7, 2018, the City reinstated him, instructed him to return

6                    Opinion of the Court                    22-10228

to work on August 8, and agreed to pay him back pay from the end of his FMLA leave until August 7.  The record also reflects that after he failed to return to work on August 8, he was notified of another hearing on August 27.  Chavous acknowledged receiving a check and a letter from the City, and even acknowledged that it was "possible" the letter concerned the August 27 hearing.  Considering Chavous's testimony in light of the entire record, a rational trier of fact could not reasonably infer a causal connection between the City's decision to terminate Chavous and his prior request for FMLA leave.  *Allen*, 121 F.3d at 646.  Accordingly, Chavous has not established a *prima facie* case of FMLA interference, we need not reach whether the City terminated him for violations of City policy unrelated to his FMLA leave, and we affirm the district court's grant of summary judgment in favor of the City on this claim.

III.

We also find no merit to Chavous's claim that the district court erred in concluding that he failed to state a *prima facie* case of retaliation under the FMLA.  Unlike FMLA interference claims, FMLA retaliation claims impose an increased burden on the employee to show that the employer's action "were motivated by an impermissible retaliatory or discriminatory animus."  *Strickland*, 239 F.3d at 1207 (quotations omitted).

We analyze FMLA retaliation claims under the burden-shifting framework set forth in *McDonnell Douglas*, 411 U.S. at 801–05.  *McAlpin*, 61 F.4th at 927.  An employee establishes a *prima facie* case of FMLA retaliation by showing that (1) he engaged in FMLA

protected conduct, (2) he suffered an adverse employment action, and (3) there is a causal link between the protected conduct and the adverse employment action. *Id.* If an employee establishes a *prima facie* case, the burden shifts to the employer to proffer a legitimate, non-retaliatory reason for the adverse action. *Id.* If the employer can do so, the burden shifts back to the employee to prove by a preponderance of the evidence that the legitimate, non-retaliatory reason is "merely pretext for prohibited, retaliatory conduct." *Id.* (quotations omitted).

As for the third element of a *prima facie* case of FMLA retaliation, to establish causation the employee must prove only "that the protected activity and the negative employment action are not completely unrelated." *Id.* at 932 (quotations omitted). For purposes of establishing causation, the relevant period is "measured from the last day of an employee's FMLA leave until the adverse employment action at issue occurs." *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1272 (11th Cir. 2017). We have held that a period of one month between the protected activity and adverse employment action is not "too protracted" to establish causation and thus a *prima facie* case. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (Americans with Disabilities Act retaliation claim). Although "[t]he burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action[,] . . . mere temporal proximity, without more, must be very close." *McAlpin*, 61 F.4th at 932 (quotations omitted). Further, "when an employer contemplates an adverse employment action before an employee

engaged in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).

Here, the district court did not err in finding that Chavous failed to state a prima facie case of FMLA retaliation. For starters, the City does not dispute that Chavous satisfied the first two elements of a prima facie case -- *i.e.*, engaging in FMLA-protected conduct and suffering an adverse employment action. *McAlpin*, 61 F.4th at 927. This means that the remaining issue is whether there is a sufficient causal link between the protected conduct of requesting FMLA leave and the adverse employment action of being terminated. *Id*. As we see it, there is not.

To analyze his retaliation claim, the relevant period begins on Chavous's last day of FMLA leave, July 26, 2018, and ends on his termination on August 27, 2018.[1] Ordinarily, a period of one month from the end of a protected activity and adverse employment action is not "too protracted" to establish the causation needed to state a prima facie case. *See Higdon*, 393 F.3d at 1220. However, more is needed when, as here, an employer contemplates an adverse employment action *before* an employee engaged

---

[1] To the extent that Chavous argues that temporal proximity should be measured from when he requested FMLA documentation (July 12, 2018) to his first, and ultimately rescinded, termination (July 26, 2018), he is incorrect. In analyzing causation in FMLA retaliation claims, we measure from the last day of FMLA leave (here, July 26, 2018) to the date of the adverse employment action (here, August 27, 2018). *See Jones*, 854 F.3d at 1272.

in protected activity.  *See Drago*, 453 F.3d at 1208.  The undisputed record in this case, which includes Chavous's disciplinary employee notices, reflects that he had a documented history of absenteeism since he began working for the City in April 2017.  Among other things, Chavous took unscheduled leave twice in January 2018, several days in March 2018, and a week in April 2018, all of which occurred before the accident in May 2018.  Indeed, his performance review noted that he "[u]ses more unscheduled leave than is acceptable," and that he used "a lot of sick leave."  What's more, Chavous knew that the City had a "progressive discipline" policy -- discussed during his orientation and in his employee notices -- and that repeat violations of City policy could result in termination.  So, on this record, close temporal proximity alone is insufficient to establish the causal link necessary to state a *prima facie* case of FMLA retaliation.  *See id.*

Moreover, Chavous failed to point to other evidence that could have established a causal link between his FMLA leave and his termination.  To the extent that Chavous relies on "derogatory comments" on performance evaluations and "shifting disciplinary actions" to help his causation showing, we disagree.  The comments on his performance review consisted of the factually-based, attendance-related comments we just listed, and include constructive, non-derogatory criticism, including his supervisor's desire to see Chavous "be more of a team player and be dedicated to his job."  Also, apart from the constructive criticism his supervisor provided, he noted several non-attendance categories in which he rated Chavous "good" or "very good."

Nor did the City engage in "shifting disciplinary actions" from which "retaliatory animus" could be inferred. As for the first employee notice Chavous cites to, in which the City classified his late arrival as "misconduct" as opposed to "tardiness," Chavous appealed this grievance. At the grievance hearing, the City presented evidence he did not dispute, which led the decisionmaker to determine that his failure to timely report amounted to a disregard for job duties (i.e., misconduct). Chavous had an opportunity to appeal this decision, and he failed to timely do so. As for the second employee notice Chavous cites to, in which the City suspended him for five days instead of two days in contravention of the union's collective bargaining agreement, this notice was amended to a two-day suspension following a meeting and agreement with Chavous and his union representative, thereby remedying any potential inconsistency. And, as for his claim that he was not informed that his employment was reinstated, as we've already discussed, no rational trier of fact could reasonably infer from the record a causal connection between the City's decision to terminate Chavous and his request for FMLA leave. *Allen*, 121 F.3d at 646.

In short, Chavous has failed to establish a *prima facie* case of FMLA retaliation. Further, because he has not established a *prima facie* case, we do not reach whether the City's reason for terminating him was pretextual.

## IV.

Finally, we are similarly unconvinced by Chavous's argument that the district court erred in granting summary judgment

on his FWCA retaliation claim.  Under the FWCA, "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law."  Fla. Stat. § 440.205.  This statute "creates a cause of action for employees who are subject to retaliatory treatment . . . for attempting to claim workers' compensation [benefits]."  *Bifulco v. Patient Bus. & Fin. Servs., Inc.*, 39 So. 3d 1255, 1257 (Fla. 2010).  We analyze FWCA retaliation claims under the *McDonnell Douglas* burden-shifting framework.  *See Andrews v. Direct Mail Exp., Inc.*, 1 So. 3d 1192, 1193 (Fla. Dist. Ct. App. 2009).

Here, the district court did not err in finding that Chavous failed to state a prima facie case of FWCA retaliation.  Notably, Chavous does not identify in his complaint the dates on which he received workers' compensation benefits.  Nevertheless, the parties do not dispute that he received workers' compensation benefits.  However, as we've already explained, Chavous's final termination on August 27, 2018, was unrelated to either his request for FMLA leave or his receipt of workers' compensation benefits.  Instead, it was due to his failure to report to work as directed.  Therefore, Chavous has not stated a *prima facie* case for retaliation under the FWCA, and, again, we need not reach whether the City's reason for terminating him was pretextual.  Accordingly, we affirm the district court's grant of summary judgment to the City of Saint Petersburg.

**AFFIRMED.**