[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12176

_____

D.C. Docket Nos. 2:16-cv-01308-LSC,

2:17-cv-00739-LSC

CANDACE E. HERREN,

Plaintiff - Appellant,

versus

LA PETITE ACADEMY, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 14, 2020)

Before WILLIAM PRYOR, Chief Judge, and GRANT, Circuit Judges, and

ANTOON,[*] District Judge.

PER CURIAM:

Candace Herren appeals the district court's grant of summary judgment in favor of her former employer, La Petite Academy, Inc., on Herren's claims of discrimination, retaliation, and interference under several federal statutes.[1]  We affirm the summary judgment on all but one claim—Herren's interference claim under the Family and Medical Leave Act.  Because, in addressing that claim, the district court did not—as required by this Court's precedent—place the burden on La Petite to establish that Herren's termination was unrelated to her request for leave, we vacate the summary judgment on that claim and remand for further proceedings.

## I.  BACKGROUND

La Petite operates childcare centers throughout the United States.  At the time the events at issue here began, eight of those centers were in Alabama.  Herren worked at various of La Petite's Alabama centers for thirty years, beginning her career in 1986 as an infant teacher and spending the last three years of her employment as the Director of La Petite's Grayson Valley center in

---

[*]Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

[1] In the district court, Herren also asserted several claims under Alabama law, but only the federal claims are at issue in this appeal.

Birmingham.

In December 2015, an infant at one of La Petite's Alabama centers—the Brookwood center—died after becoming unresponsive during a nap.  After that tragic incident, the Child Care Services Division of the Alabama Department of Human Resources (the Division), which licenses and regulates childcare centers in Alabama, began to scrutinize more closely La Petite's Alabama operations, including by visiting the centers more frequently.  In January 2016, the Division shut down La Petite's Brookwood center, and La Petite fired the director of that center.

After visits to the Grayson Valley center in the first few months of 2016, the Division issued several deficiency reports.  A January 14 report identified four deficiencies:  noncompliant children's records; noncompliant staff records; equipment missing from classrooms; and a hazardous condition on the playground—a torn tarp on a sand area.  The next day, Herren's supervisor, District Manager P.J. Kimball, sent a letter to Herren and all other center directors under her supervision reminding them of the Division's "Minimum Standards requirements" regarding napping and resting.

A week later, a January 21 report from the Division listed fourteen deficiencies at the Grayson Valley center.  The Division again cited La Petite for noncompliant records, and thirteen new shortcomings were noted:  (1) a torn

3

mattress in the infant classroom; (2) an unlocked laundry closet in the infant classroom containing hazardous materials including cleaning supplies and detergent; (3) hazardous substances—including paint, cleaners, staff purses, and hand sanitizer—not locked up elsewhere in the center; (4) unlabeled cleaning spray bottles; (5) an unsecured door leading to the outside playground; (6) broken floor tile with sharp edges in the four-year-old classroom; (7) an unsecured television in the school-age room; (8) the base of the steps to the slide was broken on the toddler playground; (9) debris and broken material on the toddler playground; (10) a cracked/broken sliding board on the preschool playground; (11) an unused water hose on the playground; (12) medication forms not filled in with the names of medications; and (13) 92 children present but only 39 children signed in.  The Division visited the Grayson Valley center again on February 5 and noted no deficiencies.

On February 29, Kimball issued a written warning to Herren that included the following "description of unacceptable performance, behavior, or conduct":

> Poor overall performance by failing to manage the school in conformance with all state/local regulations and Company policies, procedures, programs and processes.  Failure to stay in compliance with the following:
> * Not accurately maintaining the appropriate and required records on staff and children.  Staff and children files were not complete when reviewed in Jan.
> * New hires not completing their new hire paperwork on the first day of employment.

4

    \* Failure to properly maintain and administer all school financial and business related documentation.
    \* Failure to maintain the building equipment and grounds to ensure a safe environment that meets Company and state/local regulations.

Herren signed the written warning, acknowledging "that employment with the company is at-will" and that she understood "that failure to maintain or sustain acceptable levels of performance, behavior, or conduct may result in further action, up to and including separation of employment."

In early April, the Division returned to the Grayson Valley center after receiving complaints from a center employee. Although eleven of the twelve areas of concern identified by that employee were deemed unsubstantiated by the Division on April 5 and 7, the Division observed other problems on those dates and issued two more deficiency reports. In the April 5 report, the Division listed eight deficiencies: (1) hazardous substances not locked up (cleaning supplies and disinfectants under the sink in the kitchen, and hand sanitizer in the 12-to-18-month-old room); (2) not all children were signed in and out of the center when being transported to and from school; (3) staff did not wash hands immediately after changing a diaper; (4) staff did not disinfect the changing area after changing a diaper; (5) some infants younger than 12 months old were asleep in bounce seats; (6) the playground fence had holes in its base in two places; (7) there was hazardous tall grass in a playground and beside a walkway; and (8) 86 children were present but only 65 were signed in. And the Division's April 7 report noted

five shortcomings at Grayson Valley:  (1) 82 children present but only 77 signed in; (2) 16 children not signed out on April 6; (3) hazardous substances not locked up under the kitchen sink; (4) 14 infants but only 10 cribs; and (5) required staff-to-child ratios not being met.

A few weeks later, on April 26, La Petite placed Herren on administrative leave, and La Petite's Divisional Vice President of Operations, Cindy Lehnhoff, sent Rhonda Kirk, La Petite's interim human resources manager for the region encompassing Alabama, to investigate the Grayson Valley center.  Later that day, Herren requested and received paperwork from La Petite's headquarters in Michigan to apply for FMLA leave to obtain chemotherapy treatments for digestive ailments from which she suffered; she emailed the paperwork back on April 27.  Herren had previously requested and been granted intermittent FMLA to obtain those treatments from March 2015 to March 2016, but she was required to reapply because a new 12-month leave period had begun.

On May 2, Lehnhoff, with Kirk on the line, terminated Herren during a telephone call.  That same day, Herren received a certified letter informing her that she was eligible for the further FMLA leave she had requested.  Herren is Caucasian and was 51 years old at the time of her firing.

Herren filed suit in August 2016, asserting that La Petite's termination of her violated the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et*

6

*seq.* And in May 2017, she filed a second suit asserting claims of race discrimination under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*; age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*; disability discrimination under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; and several tort claims under Alabama common law. The district court consolidated the cases, and in May 2019 it granted La Petite's motion for summary judgment on all of Herren's claims. Herren appeals only the rulings on her federal claims.

## II.  STANDARD OF REVIEW

We review a grant of summary judgment *de novo*. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In assessing a motion for summary judgment, a court must "view[] the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010). And "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." *Chapman*, 229 F.3d at 1026.

### III.  DISCUSSION

*A.  The District Court Correctly Granted Summary Judgment for La Petite on Herren's FMLA Retaliation Claim and Her Discrimination Claims Under 42 U.S.C. § 1981, Title VII, the ADEA, and the ADA*

In support of her claims of discrimination under 42 U.S.C. § 1981, Title VII, the ADEA, and the ADA, as well as her FMLA retaliation claim, Herren relies on circumstantial rather than direct evidence.  Accordingly, we, like the district court, analyze these claims using the three-part framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny.  *See, e.g.*, *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013).  Under this step-by-step analysis, Herren first bears the burden of establishing a prima facie case of discrimination or retaliation.  *McDonnell Douglas*, 411 U.S. at 802.  If Herren succeeds at step one, the burden then shifts to La Petite "to articulate some legitimate, nondiscriminatory [or nonretaliatory] reason for" its actions.  *Id.*  And if La Petite meets that burden—which is one of production, not proof—Herren must, to survive summary judgment on these claims, present "sufficient evidence to create a genuine issue of material fact regarding whether" La Petite's articulated reason is a pretext for discrimination or retaliation.  *Chapman*, 229 F.3d at 1024–25.

The district court concluded, and on *de novo* review we also conclude, that Herren established a prima facie case of race discrimination under Title VII and 42

8

U.S.C. § 1981 and a prima facie case of age discrimination under the ADEA because she was qualified for her position; suffered an adverse employment action when she was terminated; and was replaced by someone outside her protected class—a younger, African-American employee. We also agree with the district court's conclusion that Herren failed to establish a prima facie case of retaliation under the FMLA or disability discrimination under the ADA because she did not establish a causal connection between her leave request or her disability on the one hand and her termination on the other. And even assuming that Herren had presented a prima facie case on these two claims, they would, as discussed next, fail at the pretext stage of the analysis along with the other discrimination claims.

Once the burden shifted to La Petite to articulate a legitimate reason for its termination of Herren, La Petite satisfied that burden by pointing to Herren's performance issues and the repeated deficiency reports regarding the Grayson Valley center. La Petite having done so, it fell to Herren to "demonstrate[] such weaknesses, implausibilities, incoherencies, or contradictions in [La Petite]'s proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018) (quoting *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)). But the evidence presented by Herren—including, but not limited to, the supposed "comparator" evidence—does not create a genuine

9

issue of material fact as to pretext, and thus we affirm the district court's grant of summary judgment to La Petite on these claims.

## B.  The District Court Erred in Granting Summary Judgment for La Petite on Herren's FMLA Interference Claim

Although the district court correctly granted summary judgment on the claims discussed in Part III.A., we reach a contrary conclusion with regard to Herren's FMLA interference claim.  In ruling in favor of La Petite on this claim, the district court relied on its assessment—under the *McDonnell Douglas* framework—of Herren's FMLA retaliation claim.  But because the burden of proof is allocated differently on these two types of claims, it was error for the court to base its interference ruling on its retaliation analysis.

This circuit recognizes that "the FMLA creates two types of claims"— "retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the [FMLA]," and "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the [FMLA]."  *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001).  Retaliatory motive is an element of an FMLA retaliation claim, and, as discussed above, absent direct evidence of an employer's motive this circuit applies the *McDonnell Douglas* burden-shifting framework to FMLA retaliation claims.  *Id.* at 1207.

On the other hand, to establish an FMLA interference claim, a plaintiff is not required to establish the employer's intent but instead "need only demonstrate that he was entitled to but denied the right" to FMLA leave. *Id.* at 1208. "[T]he employer can [then] raise the lack of causation as an affirmative defense"[2] to such a claim. *Spakes v. Broward Cty. Sheriff's Office*, 631 F.3d 1307, 1309 (11th Cir. 2011). To establish this affirmative defense, the employer must "demonstrate[] that it would have discharged [the] employee 'for a reason wholly unrelated to the FMLA leave.'" *Id.* at 1310 (quoting *Strickland*, 239 F.3d at 1208); *see also Krutzig*, 602 F.3d at 1236 ("[T]he right to commence FMLA leave is not absolute, and . . . an employee can be dismissed, preventing her from exercising her right to commence FMLA leave, without thereby violating the FMLA, if the employee would have been dismissed regardless of any request for FMLA leave.").

Here, in its summary judgment order, the district court initially noted—consistent with our precedent—that motive is not relevant to the showing that Herren is required to make to establish her FMLA interference claim. It then

---

[2] On appeal, Herren asserts that the district court erred in "sua sponte" raising this affirmative defense on La Petite's behalf. While Herren is correct that La Petite did not couch its argument on the FMLA interference claim in terms of an affirmative defense, in her response to La Petite's summary judgment motion, Herren pointed out that La Petite—not she—bore the burden of proof on the question whether there was a causal relationship between her termination and her leave request, and she asserted, in discussing the interference claim, that La Petite "argue[d] that Herren's request for additional FMLA leave was not the basis for her termination." We thus do not fault the district court for addressing the merits of the causal relationship question. But as discussed in the text, the district court did err by relying on its *McDonnell Douglas* analysis of the other claims in resolving that issue.

stated that the interference claim "fails as a matter of law" if Herren "was terminated for reasons unrelated to her FMLA leave request."  But in concluding that Herren was indeed terminated for reasons unrelated to her leave request, the district court relied on its analysis—using the *McDonnell Douglas* framework—of Herren's FMLA retaliation claim.  This was error.

Under the *McDonnell Douglas* three-step framework, the burden of persuasion remains on the plaintiff to establish her claim, and as both the Supreme Court and this Court have repeatedly emphasized, the employer's burden at the second step of that analysis "is one of production, not persuasion."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *accord Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 254 (1981) (noting that "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff" and that "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons"); *Flournoy v. CML-GA WB, LLC*, 851 F.3d 1335, 1339 (11th Cir. 2017) ("That 'exceedingly light' burden is one of production, not persuasion." (quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983))); *Kidd*, 731 F.3d at 1202.  Indeed, in its analysis of the FMLA retaliation claim, the district court noted the lightness of La Petite's burden.

12

Again, on the FMLA interference claim, La Petite—not Herren—bears the burden to establish the lack of a causal connection between Herren's request for leave and her termination.  By referring to its analysis of Herren's FMLA retaliation claim as the basis for finding a lack of causation, the district court did not place the burden on La Petite to "demonstrate[] that it would have discharged [Herren] 'for a reason wholly unrelated to'" her request for FMLA leave.  *Spakes*, 631 F.3d at 1310 (quoting *Strickland*, 239 F.3d at 1208).  We therefore vacate the summary judgment on the FMLA interference claim and remand for further proceedings on that claim.[3]

## IV.  CONCLUSION

We affirm in part, vacate in part, and remand for further proceedings in accordance with this opinion.

---

[3] We express no view on whether La Petite will be able to meet this burden on remand.  We leave the question whether La Petite prevails when the burden of proof is placed on it—instead of on Herren—for the district court to resolve in the first instance.